**UNITED STATES of America,
Plaintiff–Appellee**

v.

**David L. HARRIS, Defendant–
Appellant**

No. 99–5435.

United States Court of Appeals,
Sixth Circuit.

March 7, 2001.

Before RYAN and BOGGS, Circuit Judges; COHN, Senior District Judge.[*]

COHN, Senior District Judge.

## I.  Introduction

Defendant-appellant David L. Harris (Harris) appeals the district court's denial of his motion to suppress evidence obtained during a police search of his home pursuant to a search warrant.  After finding suspected drug paraphernalia (a marijuana stem and a plastic bag with a missing corner) in Harris's trash, the police obtained a search warrant to search Harris's home, where they subsequently discovered a kilogram of cocaine, marijuana, and $7,500 cash.  On appeal, Harris claims that the search warrant was illegal because (1) the initial search of the trash, which led to the search warrant being issued, was improper because he lived in a gated community and had an expectation of privacy in his trash, (2) information that Harris had previously been involved in illegal drug activity was too remote in time to the search warrant to be relevant, and (3) the execution of the search warrant was not done in good faith because the affidavit for the search warrant was so lacking in probable cause that reliance on it was unreasonable.

[*] The Honorable Avern Cohn, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

For the reasons that follow, we AFFIRM the decision of the district court.

## II. Background

In early 1998, police officers received information that two individuals, Diana Woods and Kenneth Black, were selling cocaine at 227 Hedgewood Court, Lexington, Kentucky, and that Harris was the source of the cocaine. On April 10, 16, and 21, 1998, confidential informants made controlled purchases of cocaine at 227 Hedgewood Court, Lexington, Kentucky. Each time, the confidential informants identified Harris as the supplier of the cocaine.

Through a vehicle registration check on the green truck Harris drove to each cocaine sale, the police learned that Harris listed an address of 1812 Dalna Drive, Lexington, Kentucky. On April 24, 1998, the police conducted a search of a curbside trash container at this address and found a corner of a plastic bag with suspected marijuana residue, a plastic bag with one corner missing, and a piece of mail addressed to Harris, bearing the same address on Dalna Drive. On May 12, 1998, the police again searched the trash at 1812 Dalna Drive. This time they found a marijuana stem.

In August 30, 1998, through a second vehicle registration check, the police discovered another address listed for Harris: 1859 Bridgestone Drive, Lexington, Kentucky. Bridgestone Drive is located in a gated community.[1] Sometime thereafter, the confidential informants identified Harris in a photograph lineup. On August 31, 1998, the police surveilled the Bridgestone Drive residence and saw a car believed to be Harris's parked across the street. The police searched a curb-side trash container outside the Bridgestone Drive residence. In it they found a marijuana stem, a plastic bag with a missing corner, a piece of mail addressed to Harris at the Bridgestone Drive address, and a change of address label from the Dalna Drive address to the Bridgestone Drive address.

On September 1, 1998, based upon an affidavit from Officer Greg Jennings, a Fayette County District Court Judge issued a search warrant for the 1859 Bridgestone Drive residence. The police executed the search warrant on the same day. During this search the police discovered a kilogram of cocaine, marijuana, and $7,500 cash. Harris, who was at the residence, was found to be carrying $1,600 cash.

Harris was charged with four drug counts and pleaded not guilty. At the hearing on Harris's suppression motion, the judge called the case "a close question" and noted that one marijuana stem alone would not support a search warrant. The judge found, however, that the marijuana stem, coupled with the April activity, provided sufficient basis for the issuance of the search warrant. The judge further found that even assuming the search warrant to be invalid, the police officers acted in good faith under the *Leon*[2] exception to the exclusionary rule. Harris thereafter entered into a conditional plea agreement, allowing an appeal on his motion to suppress.

## III. Jurisdiction and Standard of Review

■ This court has appellate jurisdiction pursuant to 28 U.S.C. § 1291. This court reviews a district court's legal conclusions de novo. *United States v. Spikes,* 158 F.3d 913, 923 (6th Cir.1998). Factual

---

1. The record is silent as to the precise contours and characteristics of the "gate." The only thing that the record establishes is that the community consists of some 200 houses.

2. *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

findings will be upheld unless clearly erroneous, and are viewed in a light most likely to support the district court's decision. *Id.*

## IV. Discussion

### A. Validity of Search Warrant

█ In issuing a search warrant, the issuing judge must "make a practical, common-sense decision, whether, given all the circumstances set forth in the affidavit. . .there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Spikes,* 158 F.3d at 923 (quoting *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). Here, Harris argues that there was no probable cause to support the issuance of the search warrant because the information in support was either stale, or illegally obtained. In particular, Harris says that the search warrant relied upon two sets of facts: first, alleged cocaine sales occurring at a different location than, and four months prior to, the date the search warrant was signed, and second, a marijuana stem found in a trash can in front of his residence. Harris argues that the information of the alleged cocaine sales was stale and that the marijuana stem was illegally obtained.

### 1. Staleness

█ Because probable cause to support a search warrant is "concerned with facts relating to a presently existing condition," W. LaFave, *Search and Seizure* § 3.7 (3d ed. 1996), the information relied upon by the police to secure a search warrant cannot be stale. In determining whether evidence is stale, "the length of time between the events listed in the affidavit and the application of the warrant, while clearly salient, is not controlling." *Spikes,* 158 F.3d at 923. Rather, it depends upon factors such as the "inherent nature of the crime," the items to be seized, the nature of the place to be searched, and even the defendant himself. *Id.* (quoting *United States v. Henson,* 848 F.2d 1374, 1382 (6th Cir.1988)).

█ In support of the argument that the information that Harris may have sold cocaine four months before the search warrant issued was stale, Harris relies heavily upon *United States v. Payne,* 181 F.3d 781 (6th Cir.1999), where a panel of this court found information provided to police one and a half months prior to the issuance of the warrant to be too stale to create probable cause.

However, the circumstances at hand are factually distinguishable from *Payne,* in which the police relied *solely* on an unreliable tip that the defendant had violated a condition of his parole. Here, the police discovered a marijuana stem in Harris's trash only one day before the search warrant was issued. Although, as the district court found, the presence of the marijuana stem alone was probably insufficient to establish probable cause, the marijuana evidence corroborated earlier information that the defendant was involved in illegal drug activity. *See Spikes,* 158 F.3d at 924 (holding recent events can refresh otherwise stale information). Moreover, although the earlier cocaine sales had taken place at another location, the police had information that Harris was the person who had sold the cocaine and that Harris had recently moved from the first address to the present location. Accordingly, the evidence supporting the issuance of the search warrant was not stale.

### 2. Expectation of Privacy

█ It is well established that the Fourth Amendment does not prohibit the warrantless search or seizure of evidence left in a place where there is no reasonable expectation of privacy. In *California v. Greenwood,* 486 U.S. 35, 108 S.Ct. 1625,

100 L.Ed.2d 30 (1988), the Supreme Court held that trash left on the street for collection in bags held no expectation of privacy, given that it was in an area accessible by animals, children, scavengers, and other members of the public, and left with the express purpose of having strangers take it away. *Id.* at 40.

■ Despite Harris's arguments to the contrary, his curb-side trash can was not protected by the Fourth Amendment simply because Harris lived in a gated community. Although the gated community presumably somewhat limited public access to Harris's residence, so far as the record is concerned, it was still accessible to the other residents and their guests, garbage collectors, and other service providers. Harris's argument that the entire community, encompassing approximately 200 houses, is within the curtilage of his home is overreaching, at best. Harris was fully aware that other people had access to the street when he put out his curb-side trash can for pick-up and thus, he had no expectation of privacy.

### B. Good Faith Exception

■ Even if the search warrant was defective, the evidence seized pursuant to the warrant need not be suppressed because the police acted in good faith. *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). There are only four limitations to the good faith exception: (1) where the magistrate is misled by false information, (2) the magistrate abandons his role as impartial judge, (3) the affidavit for the warrant is so lacking in probable cause that reliance on it is objectively unreasonable, or (4) the warrant is facially deficient. *See United States v. Van Shutters*, 163 F.3d 331, 337 (6th Cir.1998). Harris claims that the third limitation is applicable here: the affidavit was so lacking in probable cause that the police should not have relied on it. *See*

*United States v. Allen*, 168 F.3d 293 (6th Cir.1999) ("bare bones" affidavit insufficient to establish probable cause and police officers were unreasonable to have relied upon warrant). Without even addressing the fact that *Allen* was later reversed by this court sitting *en banc, United States v. Allen*, 211 F.3d 970 (6th Cir.2000) (*en banc*), this case is factually distinguishable in that, unlike in *Allen*, where the police acted solely on an informant's tip, the affidavit sworn by Officer Jennings detailed the police investigation of Harris, including surveillance, previous discovery of marijuana in Harris's trash, and the completion of controlled drug sales by Harris.

Additionally, as district court noted, and this court agrees, this was "a close case." The evidence indicates that, at the very least, the police affidavit "provided evidence sufficient to create disagreement among thoughtful and competent judges as to the existence of probable cause." *Leon*, 468 U.S. at 926, 104 S.Ct. 3405. Accordingly, the good faith exception is applicable here.