KETHLEDGE, J., delivered the opinion of the court in which CLELAND, D.J., joined, and GRIFFIN, J., joined in the result. GRIFFIN, J. (pp. 357-64), delivered a separate opinion concurring in the judgment.
OPINION
KETHLEDGE, Circuit Judge.
Search warrants target places, not people. David Church opened his home to police and showed them that he had marijuana inside. Police received a warrant to search the home for drugs. Church was later charged with drug distribution, and moved to suppress evidence gathered in that search on the theory that police had cause to suspect Church only of using drugs, not selling them. The district court denied Church’s motion, and Church pled guilty. We affirm.
*354 I.
In August 2012 Nashville police detectives Jeff Moseley and Daniel Bowling went to David Church’s home to serve him with a warrant for violating his probation. Church arrived at his home shortly thereafter, carrying a bag of fast food. After Moseley and Bowling established Church’s identity, they placed Church under arrest in his driveway. Church asked that he be allowed into the house to eat his food and call his girlfriend; Moseley and Bowling obliged, and accompanied Church inside with his consent. The detectives told Church that they smelled burnt marijuana in the house, and Church admitted that he had recently smoked marijuana. He proceeded to lead Bowling upstairs to show Bowling a marijuana blunt. Church then called his girlfriend, who came to the house and told police that, despite her efforts to get him to stop, Church regularly smoked marijuana at the house.
Moseley left the house to prepare a search-warrant affidavit while Bowling stayed with Church and Church’s girlfriend. In his affidavit, Moseley recounted the detectives’ visit to the house and their conversations with Church and his girlfriend. He swore that there was “probable and reasonable cause to believe that [Church’s house] is/are now in possession of certain evidence of a crime, to wit: violations of one or more of the following state laws as set forth in TCA Sections 39-12-204 [RICO], 39-14-903 [Money Laundering], and 39-17-417 [Tennessee Drug Control Act of 1989],” and he requested a warrant to search Church’s house for “controlled substances, [and] controlled substances paraphernalia,” among other things. A state magistrate issued a search warrant based on Moseley’s affidavit. The police executed the warrant that afternoon. In an upstairs closet, they found 4.8 grams of marijuana and 8 dilaudid (hydromor-phone) pills, along with a safe. The police asked Church for the code to the safe. Church refused to provide it, so police used a prying ram to break in. The safe contained 800 dilaudid pills, a Smith & Wesson .40-caliber handgun, and a box of ammunition.
Church thereafter sought to suppress the evidence collected by the government during the search. The district court denied his motion. Church later pled guilty to possession with intent to distribute hy-dromorphone and to being a felon in possession of a firearm. The district court sentenced Church to 170 months’ imprisonment. He appeals the district court’s denial of his motion to suppress.
II.
A.
Church argues that the warrant to search his home was defective because it was issued pursuant to an affidavit that established probable cause for the wrong crime. He contends that “a search warrant is plainly defective if it, based on a showing of probable cause of crime X, authorizes a search for proof of crime Y.” Church Br. at 2. Specifically, he argues that the search warrant issued here authorized a search for evidence of drug possession with intent to distribute, whereas Moseley’s affidavit showed probable cause to search only for evidence of simple possession. We review deferentially the magistrate’s decision to issue a search warrant, and may second-guess that decision only where the magistrate exercised his authority “arbitrarily.” United States v. Brown, 732 F.3d 569, 573 (6th Cir.2013).
The Fourth Amendment guarantees that “no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or *355 things to be seized.” U.S. Const, amend. IV. The amendment’s text makes cle.ar that “[sjearch warrants are not directed at persons; they authorize the search of ‘places’ and the seizure of ‘things,’ and as a constitutional matter they need not even name the person from whom the things will be seized.” Zurcher v. Stanford Daily, 436 U.S. 547, 555, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978). It follows that the “critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific ‘things’ to be searched for and seized are located on the property to which entry is sought.” Id. at 556, 98 S.Ct. 1970.
 Thus, to establish probable cause for a search, an affidavit must show a likelihood of two things: first, that the items sought are “seizable by virtue of being connected with criminal activity”; and second, “that the items will be found in the place to be searched.” Id. at 556 n. 6, 98 S.Ct. 1970. The nexus between “criminal activity” and the item to be seized is “automatie[ ]” when the object of the search is “contraband.” Warden, Md. Penitentiary v. Hayden, 387 U.S. 294, 307, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); see also Black’s Law Dictionary 365 (9th ed. 2009) (defining “contraband” as “[gjoods that are unlawful to import, export, produce, or possess”). Marijuana is contraband because its possession and production is prohibited under federal law and the criminal laws of most states, including Tennessee’s. See 21 U.S.C. §§ 841, 844; Tenn.Code Ann. §§ 39-17-417, 39-17-418.
A police request to search for illegal drugs therefore needs to satisfy only the second showing for a valid warrant: “a fair probability” that the drugs “will be found in a particular place.” See Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). That standard is met where, for example, the affiant swears that he has seen marijuana seeds and smelled marijuana smoke inside the house to be searched. See United States v. Brooks, 594 F.3d 488, 494 (6th Cir.2010); see also United States v. Foster, 376 F.3d 577, 588 (6th Cir.2004).
Moseley’s affidavit established that detectives had entered Church’s house and smelled marijuana, that Church showed the detectives a marijuana blunt upstairs, and that Church’s girlfriend thereafter confirmed that Church regularly smoked marijuana in the house. Thus, there was an outright certainty, not just a “fair probability,” that the house contained illegal drugs. The police got a warrant to search for illegal drugs in Moseley’s house, and they searched for drugs in places where drugs might normally be hidden. Hence the search was lawful.
Church contends that the search was unlawful because Moseley specified in the affidavit that the police were looking for evidence of drug distribution in violation of Tennessee Code § 39-17-417, whereas they had probable cause to search only for evidence of simple drug possession in violation of Tennessee Code § 39-17-418. But drugs are contraband, and the police have a right to seize them, pursuant to a search warrant, wherever they are likely to be present. For purposes of this warrant, therefore, it did not matter whether the police suspected that Church possessed marijuana, dealt marijuana, or committed some other crime. See Zurcher, 436 U.S. at 555-56, 98 S.Ct. 1970. What mattered was that there was a “fair probability” that marijuana was in the house. United States v. Berry, 565 F.3d 332, 339 (6th Cir.2009). Moseley’s affidavit left no doubt of that probability.
There was no such probability in United States v. Hodson, 543 F.3d 286 (6th Cir. *356 2008), which is the case that Church relies on here. That case concerned a warrant that authorized the police to search for child pornography in the home of a suspected child molester. The court held that evidence of child molestation, by itself, did not give cause to believe that the police would find the contraband specified in the warrant — namely, child pornography — in the molester’s home. See Hodson, 543 F.3d at 293. In this case, in contrast, a detective requested a warrant to search for contraband in a place where the detective had already seen it. The facts here are analogous not to Hodson, but to a case where the police stumble upon child pornography in a home, and then ask a magistrate for a warrant to search the home for child pornography. The difference between this case and Hodson, therefore, is simply that in this case the affidavit established probable cause.
B.
Church also argues that Moseley’s affidavit failed to establish probable cause because its contents were “stale.” Church did not make this argument in the district court, so we review only for plain error. See United States v. Soto, 794 F.3d 635, 650 n. 11 (6th Cir.2015).
To show probable cause that contraband is where an officer’s affidavit says it is, the affidavit must contain statements of fact “so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time.” Sgro v. United States, 287 U.S. 206, 210, 53 S.Ct. 138, 77 L.Ed. 260 (1932). Because contraband is often moved from place to place, information about its whereabouts can grow stale over time. Whether an affidavit’s information is stale enough to preclude a showing of probable cause depends on the facts alleged in the affidavit. See United States v. Spikes, 158 F.3d 913, 923-24 (6th Cir.1998). Thus, for instance, where an affiant swears that marijuana “is now” on certain premises, and there is no indication that the information is otherwise stale, the affidavit shows probable cause that the marijuana is where the affidavit says it is. See United States v. Smith, 783 F.2d 648, 652 (6th Cir.1986). Likewise, where an affidavit indicates that someone keeps “a ready supply of heroin” in his apartment, the phrase “ready supply” shows that heroin is likely there now. See United States v. Williams, 351 F.2d 475, 476 (6th Cir.1965).
Here, Detective Moseley’s affidavit provided every reason for the magistrate to think there were drugs in the house at the time the warrant was issued. Moseley said that “David Church uses this address,” that Church told the detectives that “he smokes marijuana in the house,” and that Church’s girlfriend said that “Church does smoke marijuana in the residence and ... she has told him not to do so in the past.” That reference to “the past” would make little sense unless Detective Moseley was describing events in the present tense. The affidavit therefore showed that Moseley was acting on fresh information.
Church contends that the affidavit is stale because Moseley did not recite the date on which he was inside Church’s house. But what counts is the affidavit’s content, not its “technical perfection.” Brooks, 594 F.3d at 490. And here Moseley’s affidavit made clear that it was not stale.
C.
Finally, Church argues that the police acted unreasonably, in violation of the Fourth Amendment, when they used a prying ram to open Church’s safe, thereby destroying it. We review that argument *357 de novo. See United States v. Winters, 782 F.3d 289, 295 (6th Cir.2015).
Obviously the police had the right to open the safe. “[A] warrant that authorizes an officer to search a home for illegal weapons also provides authority to open closets, chests, drawers, and containers in which the weapon might be found.” United States v. Ross, 456 U.S. 798, 821, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). And “officers executing search warrants on occasion must damage property in order to perform their duty.” Dalia v. United States, 441 U.S. 238, 258, 99 S.Ct. 1682, 60 L.Ed.2d 177 (1979). For example, if a home’s occupant refuses to admit an officer after he announces his authority and purpose, the officer may lawfully break open the door. See 18 U.S.C. § 3109; United States v. Ciammitti, 720 F.2d 927, 932-34 (6th Cir.1983).
Here, the police did not break open the safe capriciously: they had probable cause to believe there might be drugs inside; Church refused to provide the safe’s combination; and thus the police had no choice but to open it by force. The district court was right to hold that the police acted reasonably when they did so.
The district court’s judgment is affirmed.
CONCURRING IN THE JUDGMENT