RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 16a0284p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 16-5314

JIMMY JAIL ABERNATHY,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 3:14-cr-00012—Todd J. Campbell, District Judge.

Decided and Filed:  December 8, 2016

Before:  CLAY, KETHLEDGE, and DONALD, Circuit Judges.

_____

### COUNSEL

**ON BRIEF:**  Mariah A. Wooten, Michael C. Holley, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Nashville, Tennessee, for Appellant.   Van Vincent, UNITED STATES ATTORNEY'S OFFICE, Nashville, Tennessee, for Appellee.

CLAY, J., delivered the opinion of the court in which DONALD, J., joined. KETHLEDGE, J. (pg. 19), delivered a separate dissenting opinion.

_____

### OPINION

_____

CLAY, Circuit Judge.  Defendant Jimmy Jail Abernathy appeals from the judgment of conviction and sentence entered by the district court on March 14, 2016, pursuant to Defendant's conditional guilty plea to two counts of possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1), one count of possession of a firearm in furtherance of a

drug trafficking offense in violation of 18 U.S.C. § 924(c), and one count of possessing a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1), wherein Defendant reserved the right to challenge the district court's denial of his motion to suppress the evidence that the Nashville Police Department acquired from a search of Defendant's residence. We have subject matter jurisdiction to adjudicate this appeal pursuant to 28 U.S.C. § 1291. For the reasons set forth below, we **REVERSE** the district court's order denying Defendant's motion to suppress, and **VACATE** Defendant's convictions and sentence. We **REMAND** for further proceedings consistent with this opinion.

## BACKGROUND

### I.     Facts

The relevant facts of this case are straightforward, and not in dispute. On April 26, 2013, Detectives Patrick Oakley, Henry Particelli ("Detective Particelli"), and Anthony Heil of the Metropolitan Nashville Police Department traveled to 5809 Tru Long Court in Antioch, Tennessee ("the residence" or "Defendant's residence"), where Defendant lived with his girlfriend. Once there, the Detectives searched the trashcans outside the residence looking for evidence connecting Defendant and his girlfriend to drug trafficking ("the trash pull"). Inside the trashcans, the Detectives found: (1) "Several Marijuana roaches[1] with Marijuana residue inside;" (2) "Several plastic vacuumed packed heat sealed bags consistent to those used to package marijuana for resale containing marijuana residue with T2[2] markings;" (3) "USPS certified mail receipts addressed to Jimmy Jail Abernathy 5809 Tru Long Ct. Antioch TN [sic];" (4) mail belonging to Defendant's girlfriend; and (5) "One additional piece of mail addressed to 'current resident'" at the residence. (R. 20-1, Search Warrant Affidavit, PageID #44.)

On the basis of this evidence, Detective Particelli applied to Judge Thomas Edward Nelson of the Metropolitan Nashville Davidson County General Sessions Court for a warrant to search Defendant's home and person. Detective Particelli submitted an affidavit in support of

---

[1]A "roach" is what remains after a joint, blunt, or marijuana cigarette has been smoked. It is akin to a cigarette butt. *See United States v. Shamaeizadeh*, 80 F.3d 1131, 1134 (6th Cir. 1996).

[2]The parties do not dispute that T2 is a known strain of marijuana.

this warrant application (the "Affidavit"). The Affidavit contained form language stating that the Nashville Police Department had reason to believe that Defendant had violated the Tennessee RICO statute, the Tennessee money laundering statute, or the Tennessee Drug Control Act. The Affidavit also contained form language attesting that Detective Particelli had experience dealing with drug dealers, and detailing some common habits and practices of such dealers. Finally, the Affidavit contained a "Statement of Facts In Support of Probable Cause," which provided as follows:

> This affidavit is made by Detective Henry Particelli, who has been a sworn law enforcement officer since 2010 with the Metro Nashville Police Department and is currently assigned as a narcotics investigator for the Central Precinct Crime Suppression Unit testified herein which is based upon information received from other law enforcement officers, unless otherwise stated, which your Affiant believes to be true, and is as follows:

> **I have received information that the occupants of 5809 Tru Long Ct. Antioch, TN 37013 Davidson County have been and are currently engaging in illegal drug activity**. I searched police and utility data bases and discovered a silver Ford Expedition TN tag F1301F is currently registered to Jimmy Jail Abernathy with the address of 5809 Tru Long Ct. Antioch, TN 37013 Davidson County. I have personally observed the said vehicle parked out front of the residence on multiple occasions. I also discovered a 2008 Pontiac Solstice TN Tag A7289H is registered to [Defendant's girlfriend]. I have personally observed the said vehicle parked in the driveway of the residence. Webpro records states [sic] that [Defendant's girlfriend] is the owner of the property since 2006.

> Within the last 72 hours your affiant posed as a garbage disposal employee. I went to 5809 Tru Long Ct. Antioch, TN 37013 Davidson County and picked up the garbage container that was left at the curbside of the residence on the morning of scheduled garbage pickup. I then sorted through the garbage and found the following items that were seized as evidence and turned into the MNPD property room:

> 1. **Several Marijuana roaches with Marijuana residue inside**
> 2. **Several plastic vacuumed packed heat sealed bags consistent to those used to package marijuana for resale containing marijuana residue with T2 markings. T2 is a known strain of marijuana**
> 3. USPS certified mail receipts addressed to Jimmy Jail Abernathy 5809 Tru Long Ct. Antioch TN [sic]
> 4. USPS certified mail receipts addressed to [Defendant's girlfriend].

5. One additional piece of mail addressed to 'current resident' at 5809 Tru Long Ct. Antioch, TN 37013 Davidson County

Based on the illegal drugs found in the waste container, your affiant wishes to search the premises of 5809 Tru Long Ct. Antioch TN [sic] and each person occupying said premises. In your affiant's training and experience persons at locations where drugs are sold and or used many times conceal or secrete illicit items on their person to conceal them from police detection. Your affiant has also learned in training and experience that many times subjects at locations involved in illicit drug activity are in possession of weapons and or have outstanding warrants for their arrest.

(*Id.* PageID #43–44 (emphasis added).) Thus, although Defendant had a lengthy history of drug and weapons charges, that information was neither in the Affidavit, nor presented to Judge Nelson.

Judge Nelson granted Detective Particelli's warrant application on April 28, 2013 ("the Warrant"). On May 3, 2013, the Nashville Police Department searched Defendant's residence. The search revealed large quantities of cash, marijuana, cocaine, and firearms. Thereafter, on January 29, 2014, a federal grand jury indicted Defendant in the Middle District of Tennessee on four drug and weapons charges.

## II.    Procedural History

Defendant moved to suppress the evidence that was seized when executing the Warrant, and also moved for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) to challenge the accuracy of certain representations made by Detective Particelli in the Affidavit. The district court denied the motion to suppress, determining that the Warrant was facially supported by probable cause. However, the district court granted the motion to conduct a *Franks* hearing.

At the *Franks* hearing, Defendant challenged Detective Particelli's statement in the Affidavit that he had "received information that the occupants of 5809 Tru Long Ct. Antioch, TN 37012 Davidson County have been and are currently engaging in illegal drug activity." Detective Particelli ultimately admitted that, when he submitted the Affidavit, he had: (1) no information that "somebody [was] selling [drugs] out of [Defendant's] residence;" (2) no direct evidence "that [Defendant] was trafficking drugs;" and (3) not seen Defendant "do anything

connected to his house that might have to do with drugs." (R. 117, Suppression Hearing Transcript, PageID #553.) At the close of the hearing, the district court found that the statement violated *Franks*, and struck it from the Affidavit:

> **THE COURT**: As to the *Franks* issue dealing with the first sentence of the search warrant affidavit . . . I am finding that that is a misleading statement. It creates the impression that there is drug activity at the place to be searched. And there would be no reason to specifically have the occupants and the name of the street location if you weren't trying to create the impression that drug activity was going on in the house.
>
> And so the result in looking at the affidavit, the Court needs to determine whether there is probable cause without that sentence.

(*Id.* PageID #568–69.) The district court nonetheless upheld the Search Warrant, finding that the trash pull alone established probable cause:

> **THE COURT**: I am finding that the trash pull alone raises probable cause and excise the first sentence, there is still probable cause in the affidavit search warrant based on the vacuum-packed, heat-sealed bags consistent to those used to package marijuana for resale containing marijuana residue with T2 markings. T2 is a known strain of marijuana, and it reflects it is within the last 72 hours. I am finding that the search warrant affidavit creates probable cause for Tennessee Drug Control Act of 1989 violation based on the trash pull. And I am not finding that the first sentence was intentionally misleading. It simply is misleading. And whether it was reckless, intentional or inadvertent, it is misleading and inaccurate information in the context of the search warrant and should be excised in terms of determining whether there is probable cause in the search warrant affidavit and the search warrant itself.

(*Id.* PageID # 569–70.)

After losing at the *Franks* hearing, Defendant pled guilty to all counts, but reserved the right in his plea agreement to appeal the suppression issue. On March 15, 2016, the district court entered judgment sentencing Defendant to 131 months in prison. On the same day, Defendant filed a timely notice of appeal.

**DISCUSSION**

**I.　　Applicable Legal Principles**

The Constitution's Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. A "state search warrant being challenged in a federal court must be judged by federal constitutional standards." *United States v. McManus*, 719 F.2d 1395, 1397 (6th Cir. 1983) (citing *Elkins v. United States*, 364 U.S. 206 (1960)). "Probable cause is defined as 'reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion.'" *United States v. King*, 227 F.3d 732, 739 (6th Cir. 2000) (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)). In assessing whether a warrant to search a residence passes muster under the Fourth Amendment, the "critical element . . . is . . . that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978).

"[T]o establish probable cause for a search, an affidavit must show a likelihood of two things: first, that the items sought are 'seizable by virtue of being connected with criminal activity'; and second, 'that the items will be found in the place to be searched.'" *United States v. Church*, 823 F.3d 351, 355 (6th Cir. 2016) (quoting *Zurcher*, 436 U.S. at 555 n.6); *United States v. Berry*, 565 F.3d 332, 338 (6th Cir. 2009) (To establish probable cause, officers must demonstrate "a fair probability that contraband or evidence of a crime will be found in a particular place." (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983))). "The nexus between 'criminal activity' and the item to be seized is 'automatic[]' when the object of the search is 'contraband.'" *Church*, 823 F.3d at 355 (quoting *Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 307 (1967)). "A police request to search for illegal drugs therefore needs to satisfy only the second showing for a valid warrant: 'a fair probability' that the drugs 'will be found in a particular place.'" *Id.* (quoting *Gates*, 462 U.S. at 238).

"When determining whether an affidavit establishes probable cause, we look only to the four corners of the affidavit; information known to the officer but not conveyed to the magistrate

is irrelevant." *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010); *United States v. Pinson*, 321 F.3d 558, 565 (6th Cir. 2003). We do not consider "recklessly and materially false statements" in the affidavit that have been properly stricken during a *Franks* hearing. *See United States v. Elkins*, 300 F.3d 638, 649 (6th Cir. 2002) (footnote omitted). Nor do we consider "stale" information. *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998). Whether information is stale depends on the "inherent nature of the crime," *United States v. Henson*, 848 F.2d 1374, 1382 (6th Cir. 1988), and turns on several factors including: (1) "the character of the crime;" (2) "the criminal;" (3) "the thing to be seized;" and (4) "the place to be searched." *United States v. Hammond*, 351 F.3d 765, 771–72 (6th Cir. 2003) (quoting *United States v. Greene*, 250 F.3d 471, 480–81 (6th Cir. 2001)). "In the context of drug crimes, information goes stale very quickly 'because drugs are usually sold and consumed in a prompt fashion.'" *Brooks*, 594 F.3d at 493 (quoting *United States v. Frechette*, 583 F.3d 374, 378 (6th Cir. 2009)). Information is considered stale and unreliable if it is impossible to tell from the affidavit when the circumstances giving rise to probable cause occurred. *See United States v. Boyd*, 422 F.2d 791, 792 (6th Cir. 1970).

"When evidence is obtained in violation of the Fourth Amendment, the judicially developed exclusionary rule usually precludes its use in a criminal proceeding against the victim of the illegal search and seizure." *Illinois v. Krull*, 480 U.S. 340, 347 (1987); *Weeks v. United States*, 232 U.S. 383, 398 (1914), *overruled on other grounds by Mapp v. Ohio*, 367 U.S. 643 (1961).

## II.     Probable Cause

### A.     Standard of Review

We have described the standard of review applicable to the denial of a motion to suppress as follows:

> Whether a search warrant affidavit establishes probable cause to conduct the search is a legal question that this Court reviews de novo. *United States v. Frazier,* 423 F.3d 526, 531 (6th Cir. 2005). In reviewing a magistrate's decision to issue a warrant, the Court must accord the magistrate's determination 'great deference.' *United States v. Allen,* 211 F.3d 970, 973 (6th Cir. 2000) (en banc). On appeal of a district court's decision on a motion to suppress, although we must

view the evidence 'in a light most likely to support the decision of the district court,' *Frazier,* 423 F.3d at 531 (citing *United States v. Heath,* 259 F.3d 522, 528 (6th Cir. 2001)), 'when the district court itself is a reviewing court, . . . this court owes the district court's conclusions no particular deference.' *United States v. Weaver,* 99 F.3d 1372, 1376 (6th Cir. 1996).

*Brooks*, 594 F.3d at 492; *see also United States v. Martin*, 526 F.3d 926, 936 (6th Cir. 2008).

## B.    Scope of the Warrant

Defendant first argues that the Warrant was overbroad, because the Affidavit only showed evidence suggesting that Defendant possessed marijuana, while the Warrant was issued to find evidence of drug trafficking. We disagree.

Defendant's argument is foreclosed by our recent decision in *Church*. There, the Nashville Police Department sought and received a warrant to search the defendant's home for evidence of drug crimes using the same form language at issue in the Affidavit here. *Church,* 823 F.3d at 354. In support of the warrant, an officer swore out an affidavit averring that he had entered the defendant's home with his permission, smelled recently burnt marijuana, and the defendant admitted that he had been smoking in the house. *Id.* After receiving the warrant, the police searched the defendant's home and found a large quantity of drugs and an illegal weapon. *Id.* On appeal, the defendant argued "that the search was unlawful because [the officer] specified in the affidavit that the police were looking for evidence of drug distribution . . . whereas they had probable cause to search only for evidence of simple drug possession . . . ." *Id.* at 355. We rejected that argument, holding that:

> [D]rugs are contraband, and the police have a right to seize them, pursuant to a search warrant, wherever they are likely to be present. For purposes of this warrant, therefore, it did not matter whether the police suspected that Church possessed marijuana, dealt marijuana, or committed some other crime. *See Zurcher*, 436 U.S. at 555–56, 98 S.Ct. 1970. What mattered was that there was a 'fair probability' that marijuana was in the house. [*Berry,* 565 F.3d at 339]. [The officers]'s affidavit left no doubt of that probability.

*Id.* (emphasis added).

Here therefore, it does not matter whether the Affidavit established probable cause for marijuana possession, or marijuana trafficking; as long the Affidavit showed a fair probability

that marijuana would be found in Defendant's home, the Warrant was justified. *Id.* Accordingly, we hold that the Warrant was not overbroad. We therefore turn to the question of whether the trash pull evidence recovered from Defendant's residence created a fair probability that drugs would be found in Defendant's home.

### C.    Sufficiency of the Trash Pull Evidence

Defendant next argues that the Warrant was not supported by probable cause, because the marijuana roaches and T2-laced plastic bags the police recovered from Defendant's garbage were insufficient to create a fair probability that drugs would be found in Defendant's home. We agree.

At the outset, we note that in evaluating whether the Affidavit provided the magistrate with sufficient evidence to create probable cause to issue the Warrant, we consider only the statements in the Affidavit that were not redacted during the *Franks* hearing. *Franks*, 438 U.S. at 155–56; *Elkins*, 300 F.3d at 649. The government has not challenged the district court's ruling that Detective Particelli's statement that he "received information that the occupants of 5809 Tru Long Ct. Antioch, TN 37012 Davidson County [had] been and [were] currently engaging in illegal drug activity" was recklessly and materially false in violation of *Franks*.[3]   Accordingly, the only proper evidence the Affidavit contained supporting probable cause was the "several" marijuana roaches and T2-laced plastic bags the police recovered from the trash pull at Defendant's residence.

It is well established in this Circuit that drug paraphernalia recovered from a trash pull establishes probable cause to search a home when combined with other evidence of the resident's involvement in drug crimes. *See, e.g., Marcilis v. Township of Redford*, 693 F.3d 589, 600–01 (6th Cir. 2012) (probable cause where police observed defendants engaging in controlled drug buys, and recovered drug items from a trash pull); *Martin*, 526 F.3d at 930, 937 (probable cause

---

[3]In its "Summary of the Argument," the government asserts in passing that the statement the district court redacted during the *Franks* hearing was "correct" and "should not be found to be misleading." (Opposition Brief at 17.) The government never developed this argument further elsewhere in its brief. Defendant is accordingly correct that the argument has been waived. *See, e.g., United States v. Robinson*, 390 F.3d 853, 886 (6th Cir. 2004) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997))).

where informant named defendant as drug trafficker, defendant had prior drug convictions, and drug evidence was recovered from trash pull); *Spikes*, 158 F.3d at 918–19 (probable cause where informant told police that house was site of drug trafficking, police saw drug trafficking activity at the home, and police recovered drug evidence from trash pull); *United States v. Hill*, 142 F.3d 305, 307 (6th Cir. 1998) (same).

We have not previously considered, however, whether and under what circumstances trash pull evidence, standing alone, can establish probable cause to search a home. In arguing that probable cause was established here, the government cites a line of Eighth Circuit cases that ultimately rely on *United States v. Briscoe*, 317 F.3d 906 (8th Cir. 2003). In *Briscoe*, the police applied for a warrant to search the defendant's home based on forty "marijuana seeds and twenty-five marijuana stems" found in the trashcan outside of the home, as well as an intelligence analyst's report regarding suspected narcotics trafficking. 317 F.3d at 907. The defendant argued that the analyst report cited in the affidavit supporting the warrant violated *Franks*, and that the marijuana seeds and stems, standing alone, were insufficient to create probable cause. *Id.* On appeal, the Eighth Circuit assumed *arguendo* "that the challenged statements in the search warrant application were false or made in reckless disregard for the truth," but nevertheless held that "the marijuana seeds and stems recovered from Briscoe's garbage were independently adequate to establish probable cause." *Id.* at 907–08. Without significant elaboration, the court reasoned that "not only does the presence of discarded marijuana stems and seeds reasonably suggest that ongoing marijuana consumption or trafficking is occurring within the premises, but the simple possession of marijuana seeds is itself a crime under both federal and state law." *Id.* at 908.

Defendant, by contrast, argues that this case should be controlled by our decision in *United States v. McPhearson*, 469 F.3d 518 (6th Cir. 2006). In *McPhearson*, the defendant was arrested for simple assault on the front porch outside of his residence. 469 F.3d at 520. Incident to the arrest, the police searched the defendant's pants pockets and discovered a quantity of crack cocaine. *Id.* Relying on the assault arrest and the cocaine they discovered in the defendant's pocket, the police sought and obtained a warrant to search the defendant's home. *Id.* at 521. Inside, they discovered significant "quantities of crack cocaine and firearms." *Id.* at 522. On

appeal, we held that the warrant lacked probable cause, and vacated the defendant's convictions. *Id.* at 525. As we explained:

> The affidavit in this case did no more than state that [the defendant], who resided at 228 Shelby Street, was arrested for a non-drug offense with a quantity of crack cocaine on his person. These averments were insufficient to establish probable cause because they do not establish the requisite nexus between the place to be searched and the evidence to be sought. '[A] suspect's mere presence or arrest at a residence is too insignificant a connection with that residence to establish that relationship necessary to a finding of probable cause.' *United States v. Savoca,* 761 F.2d 292, 297 (6th Cir. 1985) (quoting *United States v. Flores,* 679 F.2d 173, 175 (9th Cir. 1982)).

> The government argues that [the defendant]'s arrest outside his home with drugs on his person was sufficient to establish a fair probability that his residence would contain evidence of wrongdoing. The argument depends on an inference that 'an individual arrested outside his residence with drugs in his pocket is likely to have stored drugs and related paraphernalia in that same residence.' (Gov't's Br. 11.) This inference can be drawn permissibly in some cases, as evidenced by *United States v. Miggins* and the cases cited therein. 302 F.3d 384, 393–94 (6th Cir. 2002). **But in all those cases, the affidavits contained an additional fact that permitted the magistrate to draw the inference that evidence of wrongdoing would be found in the defendants' homes—namely, the independently corroborated fact that the defendants were known drug dealers at the time the police sought to search their homes**. *See, e.g., United States v. Feliz,* 182 F.3d 82, 87–88 (1st Cir. 1999) (finding it reasonable to infer that a known drug dealer would store evidence of his trade at home); *United States v. McClellan,* 165 F.3d 535, 546 (7th Cir. 1999) ('[I]n issuing a search warrant, a magistrate is entitled to draw reasonable inferences about where the evidence is likely to be kept . . . and . . . in the case of drug dealers evidence is likely to be found where the dealers live.'). That fact was absent from the affidavit in this case. McPhearson was not a known drug dealer: his prior convictions were for property crimes, and the warrant on which the police arrested him was for simple assault. **In the absence of any facts connecting McPhearson to drug trafficking, the affidavit in this case cannot support the inference that evidence of wrongdoing would be found in McPhearson's home because drugs were found on his person**.

*Id.* at 524–25 (emphasis added) (internal quotation marks altered) (footnote omitted).

As Defendant points out, we have also twice suggested in dicta that mere trash pull evidence, standing alone, is insufficient to create probable cause to search a residence. *See Brooks,* 594 F.3d at 495 n.5 (stating that it "may well [be] correct" that drug "evidence from []

garbage bags [is] insufficient to establish probable cause to search the house because . . . there [is] no way of knowing how much time elapsed between the smoking of the marijuana and placing the trash on the curb"); *United States v. Harris*, 6 F. App'x 304, 307 (6th Cir. 2001) ("[A]s the district court found, the presence of [a] marijuana stem alone [is] probably insufficient to establish probable cause . . . .").

The footnote Defendant cites from *Brooks* discusses the Southern District of Ohio's thoughtful analysis in *United States v. Elliott*, 576 F. Supp. 1579 (S.D. Ohio 1984). In *Elliott*, the police sought and obtained a warrant to search the defendant's home based on a tip from a confidential informant, as well as "a quantity of partially smoked marijuana cigarettes and several stems from marijuana stalks" that were found in the defendant's garbage. *Id.* at 1580–81. At a hearing challenging the warrant, the district court struck the portion of the affidavit dealing with the confidential witness tip, leaving only the trash pull evidence. *Id.* at 1581. The court concluded "that the discovery of the discarded contraband, standing alone, is insufficient to support a determination of probable cause." *Id.* The court reasoned that:

> Despite the prompt action of the agent in seeking the warrant the day after the garbage was examined, the evidence in the garbage did not render the continued presence of marijuana probable. The affidavit does not indicate a large quantity of discarded contraband which might indicate its continued presence in the house. Instead, all we can ascertain is that at least two partially smoked marijuana cigarettes and several stems had left the home at some point in time.

> Furthermore, the nature of the evidence is not such that its continued presence in the home is probable. To the contrary, this refuse is merely the waste product of past marijuana use. Moreover, it is unclear when that past use occurred, when the garbage was removed from the house or even when it was scheduled to be picked up. Even assuming weekly garbage collection, the contraband may well have been evidence of marijuana use five days prior to the examination of the garbage. Without corroboration, we cannot say that this supports a conclusion of the probable presence of contraband on the day of the search.

> We can conceive of the argument that the anonymous complaint and the affiant's surveillance, despite their deficiencies, are corroborative of the contraband found in the garbage, and therefore permit the conclusion of the continued presence of contraband. Given the nature of the contraband found in this case, we find this argument unpersuasive. The waste products of marijuana use do not, of themselves, indicate any continuing presence of contraband in the home.

*Id.* at 1581.  The court also expressed concern that to "conclude that such a single instance [of past marijuana use] provides sufficient probable cause for a search warrant would be to subject to a full and probing search, the home of a cocktail party host, whose guests, perhaps unbeknownst to him, indulge in illicit substances and discard the residue." *Id.* at 1582 n.1.

After a thorough review of the record and relevant case law, we agree with Defendant that the evidence recovered from the trash pull here did not create a fair probability that drugs would be found in Defendant's home.  Our conclusion stems from two considerations.

First, a finding of probable cause here would be inconsistent with *McPhearson*.  In *McPhearson*, the defendant had crack cocaine in his pocket, and the police arrested him and searched his pocket immediately after he stepped outside of his home and onto his porch. 469 F.3d at 520.  These facts were included in the affidavit submitted to the magistrate.  *Id.* at 521.  The police thus had *indisputable* proof that drugs had recently been inside the defendant's residence: the drugs were in his pocket, and he was inside the residence.  *Id.*  We nonetheless rejected the government's argument that "an individual arrested outside his residence with drugs in his pocket is likely to have stored drugs and related paraphernalia in that same residence," because there was no additional evidence that the defendant was or had been involved in drug crimes.  *Id.* at 524–25.

The same reasoning is even more applicable here.  The trash pull evidence Detective Particelli recovered from Defendant's garbage suggested that a small quantity of marijuana might have recently been in Defendant's residence.  The connection between the recovered drugs and the residence is much more attenuated here than it was in *McPhearson*; while the officers could be absolutely certain that drugs had recently been in the *McPhearson* residence, there is no way of knowing with certainty that the trash pull evidence here: (i) came from Defendant's residence at all; or (ii) if it did, that it was in the residence recently.  If the crack cocaine found in the *McPhearson* defendant's pocket did not create a fair probability that more drugs would be found in his home, *a fortiori* the trash pull evidence here did not create a fair probability that drugs would be found in Defendant's residence.  *Cf. United States v. Brown*, 828 F.3d 375, 382–84 (6th Cir. 2016) (holding that police lacked probable cause to search home even though drug dog alerted to defendant's car, defendant had recently been detained for drug trafficking, and

defendant had prior drug convictions, because there was an insufficient nexus between defendant's drug activities and his home). Moreover, as in *McPhearson*, the critical missing ingredient from the Affidavit was evidence that Defendant had been involved in past drug crimes. *McPhearson*, 469 F.3d at 525. Although Detective Particelli knew of Defendant's criminal history, he did not include those facts in the Affidavit, and therefore they could not have contributed to the magistrate's probable cause finding. *Brooks*, 594 F.3d at 492.

Second, the connection between the small quantity of marijuana paraphernalia recovered from Defendant's garbage and his residence is too logically attenuated to create a fair probability that more drugs were in the residence. Although the trash pull evidence certainly suggested that someone in the residence had smoked marijuana recently, that fact alone does not create an inference that the residence contained additional drugs. Drugs by their very nature "are usually sold and consumed in a prompt fashion," *Frechette*, 583 F.3d at 378, and so the more probable inference upon finding drug refuse is that whatever drugs were previously in the residence had been consumed and discarded. Further, it is impossible to tell when the marijuana roaches and plastic bags were put into the garbage. Depending on the household, the trash pull evidence could have been put in the garbage anywhere from one day to several weeks earlier. The inability to tell when drugs were last in the home diminishes any inference that drugs were still in the home. *Elliott*, 576 F. Supp. at 1581–82; *see also Brooks*, 594 F.3d at 495 n.5 (suggesting that *Elliott* "may well have been correct in invalidating the search because there was no way of knowing how much time elapsed between the smoking of the marijuana and placing the trash on the curb"); *Boyd*, 422 F.2d at 792 (holding that a warrant to search a residence lacked probable cause where the affidavit failed to specify when the affiant "smelled the odor of fermented liquor" on the premises, and therefore the court could not tell whether the evidence was stale).

*Briscoe* and the cases the government cites in urging that probable cause was present here are inapposite. In *Briscoe*, the police found "forty marijuana seeds and twenty-five marijuana stems" in the defendant's garbage. 317 F.3d at 907. A large quantity of drug refuse in a residence's garbage suggests repeated and ongoing drug activity in the residence, and therefore creates a fair probability that more drugs remain in the home. *See Elliott*, 576 F. Supp. at 1581 ("[A] large quantity of discarded contraband . . . might indicate its continued presence in the

house."). Here, however, Detective Particelli only specified that "several" marijuana roaches and plastic bags were found in Defendant's garbage. The word "several" means "more than one or two but not a lot," indicating that the quantity of roaches and bags found in the trash pull was not large enough to suggest repeated or ongoing marijuana consumption in the residence. Black's Law Dictionary, 1583 (10th ed. 2014).

Several of the government's other cases are also distinguishable. In each of those cases, the warrant application either contained corroborating evidence tying the defendant to drug activity in addition to the trash pull evidence, or else the police recovered more evidence from the trash pull than was present here. *See United States v. Thurmond*, 782 F.3d 1042, 1043–44 (8th Cir. 2015) (probable cause established where, in addition to trash pull evidence, the warrant application specified that an informant had told police that drug activity was occurring at the residence, and police records revealed that the defendant had multiple prior drug arrests); *United States v. Seidel*, 677 F.3d 334, 338–39 (8th Cir. 2012) (probable cause established where trash pull evidence included a ledger noting pay-owe sheets for drug transactions); *United States v. Montieth*, 662 F.3d 660, 664 (4th Cir. 2011) (probable cause established where warrant application detailed defendant's "several drug offenses" in addition to trash pull evidence); *United States v. Roberson*, 332 F. App'x 290, 291–92 (6th Cir. 2009) (probable cause established where warrant application detailed prior drug conviction and neighbor's tip regarding drug activity at the residence in addition to trash pull evidence). We need not disagree with any of these cases in order to find probable cause lacking here.

The government's most relevant case is *United States v. Allebach*, 526 F.3d 385, 387 (8th Cir. 2008). In *Allebach*, the Eighth Circuit held that probable cause was established solely on the basis of trash pull evidence that included: (1) "two plastic bags with cocaine residue;" (2) "two corners torn from plastic bags" (plastic sandwich bags with torn corners are often used to distribute crack); (3) "Brillo pads" (which are often used as filters for crack pipes); and (4) "a film canister with white residue." *Id.* at 386 (footnotes omitted). Thus, like this case, the *Allebach* trash pull only uncovered a small quantity of drug paraphernalia suggesting recent drug use within the home. *Id.* *Allebach*, however, contained no analysis beyond a citation to

*Briscoe*—where, as we have noted, there was much stronger evidence of ongoing long-term drug use within the residence. We therefore respectfully decline to follow *Allebach* here.

Finally, we are not persuaded by the dissent's citation to our decision in *United States v. Lawrence*, 308 F.3d 623, 627 (6th Cir. 2002). In *Lawrence*, we held that the district court did not abuse its discretion in declining to permit an informant "who had provided the police with information relied on in obtaining the search warrant" for the defendant's home to testify at the defendant's suppression hearing. *Id.* In one sentence, without any analysis, we concluded that "plastic bags containing wrappers with cocaine residue" found in the defendant's trashcan "supplied sufficient probable cause for the search warrant." *Id.* at 626–27. However, *Lawrence* did not discuss or even mention the quantity of drug paraphernalia recovered from the defendant's garbage. As we have previously explained, this factor is crucial in determining whether probable cause has been established. *Lawrence* therefore does not control our analysis here.

Accordingly, we hold that the marijuana roaches and T2-laced plastic bags Detective Particelli recovered from the trash pull here were insufficient, standing alone,[4] to create probable cause to search Defendant's residence.[5]

---

[4]We do not hold that drug paraphernalia recovered from a trash pull can *never* establish probable cause to search a residence without additional corroborating evidence. For example, as we have noted, a particularly large quantity of drug refuse in a residence's garbage may suggest repeated and ongoing drug use in the residence sufficient to establish a fair probability that drugs will be found inside. We merely hold that the evidence recovered from the garbage outside of Defendant's residence was insufficient to establish probable cause.

[5]Although not relevant to the disposition of this appeal, we note that both the Nashville Metropolitan Council and the Memphis City Council have recently passed ordinances decriminalizing possession of small amounts of marijuana. *See* Nashville Substitute Ordinance No. BL2016-378 (Sept. 6, 2016); Memphis Substitute Ordinance No. 5626 (Oct. 4, 2016). In spite of these ordinances, marijuana possession remains illegal under Tennessee state law, *see* Tenn. Code Ann. § 39-17-418(a), and federal law, *see* 21 U.S.C. § 844(a). We have no occasion today to decide whether ordinances like those adopted in Nashville and Memphis might limit the ability of law enforcement to rely on evidence of marijuana possession in obtaining warrants to search private residences.

## III.    Good Faith Exception

### A.    Standard of Review

We review the applicability of the good faith exception to the Fourth Amendment's exclusionary rule *de novo*.  *United States v. Washington*, 380 F.3d 236, 241 (6th Cir. 2004); *United States v. Leake*, 998 F.2d 1359, 1366 (6th Cir. 1993).

### B.    Analysis

The government argues that even if the Warrant lacked probable cause, Defendant's convictions should still be upheld under the good faith exception to the exclusionary rule announced in *United States v. Leon*, 468 U.S. 897 (1984).  We disagree.

In *Leon*, the Supreme Court held that the Fourth Amendment exclusionary rule does not apply when police officers rely in good faith on a warrant that is ultimately determined to lack probable cause.  *Id.* at 913.  In announcing this rule, however, the Court made clear that "[d]eference to the magistrate . . . is not boundless." *Id.* at 914.  In particular, the Court held that the good faith exception does not apply: (1) "if the magistrate or judge in issuing a warrant was misled by information in an affidavit" that violated *Franks*; (2) "where the issuing magistrate wholly abandoned his judicial role;" (3) when the warrant is "based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;'" and (4) when a warrant is "so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid."  *Id.* at 923 (quoting *Brown v. Illinois*, 422 U.S. 590, 610–11 (1975) (Powell, J., concurring)).

In the years since *Leon*, this Court and others have repeatedly held that the good-faith exception does not apply when "the supporting affidavit contained knowing or reckless falsity" in violation of *Franks*.  *United States v. Hammond*, 351 F.3d 765, 773–74 (6th Cir. 2003) (declining to apply good faith exception where officer's affidavit contained "falsehoods and half-truths" in violation of *Franks*); *United States v. West*, 520 F.3d 604, 612 (6th Cir. 2008) (declining to apply good faith exception where officer violated *Franks* by "purposely

withh[olding] information when he prepared his affidavit"); *see also United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir. 1993) ("[U]nder *Leon*, a *Franks* violation is not excused."); *United States v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990) ("A warrant that violates *Franks* is not subject to the good-faith exception to the exclusionary rule."); *United States v. Vigeant*, 176 F.3d 565, 572 (1st Cir. 1999).

Here, the district court determined that part of the Affidavit violated *Franks*. The government has not challenged this ruling on appeal. Nor has the government explained—apart from a conclusory assertion that "the judicial officer who issued the search warrant was not misled by information in the affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth," (Opposition Brief at 25)—why we should nevertheless excuse Detective Particelli's *Franks* violation here. Accordingly, we hold that the government cannot benefit from *Leon*'s good faith exception. *Hammond*, 351 F.3d at 774; *West*, 520 F.3d at 612.

## CONCLUSION

For the foregoing reasons, we hold that the district court erred in denying Defendant's motion to suppress the evidence seized from the search of his residence. Accordingly, the district court's order denying Defendant's motion to suppress is **REVERSED**. We **VACATE** Defendant's convictions and sentence, and **REMAND** for further proceedings consistent with this opinion.

_____

**DISSENT**

_____


KETHLEDGE, Circuit Judge, dissenting.  I respectfully disagree with my colleagues that the evidence from the trash pull did not establish probable cause.  In the trash can, officers found several marijuana roaches, vacuum-sealed baggies containing marijuana residue, and mail addressed to the defendant.  The address on the mail was the address of the house later searched, which is reason enough to think the roaches and baggies came from that same house.  Taken together, these facts created a fair probability that the officers would find contraband or evidence of a drug crime in the house.  *See United States v. Lawrence*, 308 F.3d 623, 627 (6th Cir. 2002).  In *Lawrence*, we held that the officers' discovery of plastic bags containing cocaine residue in the defendant's trash was enough to establish probable cause, even if the tip that triggered the trash pull should have been excised from the warrant affidavit.  *Id.* at 626, 627.  We should find probable cause here as well.  I would therefore affirm the district court's order denying the defendant's motion to suppress.