[Cite as *State v. Anglen*, 2015-Ohio-4070.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 102022**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## TERRI ANGLEN

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-583055-A

**BEFORE:** E.T. Gallagher, J., Celebrezze, A.J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** October 1, 2015

**ATTORNEY FOR APPELLANT**

R. Brian Moriarty
2000 Standard Building
1370 Ontario Street
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY:     Stephanie N. Hall
Assistant Prosecuting Attorney
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

EILEEN T. GALLAGHER, J.:

{¶1} Defendant-appellant, Terri Anglen ("Anglen"), appeals from her convictions and sentence, raising three assignments of error for review:

> 1. The defendant's plea was not knowingly, intelligently, and voluntarily made because the court failed to inform defendant of the effect of her no contest plea.
>
> 2. The court abused its discretion and/or committed reversible error when it denied defendant's motion to withdraw her no contest plea before sentencing.
>
> 3. The court abused its discretion and/or committed reversible error when it imposed restitution to Drummond Financial in an amount of $10,000 and to PNC Bank in an amount of $35,539.91.

{¶2} After careful review of the record and relevant case law, we affirm Anglen's convictions and sentence.

## I.  Procedural and Factual History

{¶3} In July 2012, Anglen purchased a 2012 Buick Lacrosse from Jay Buick GMC.  The vehicle was financed through a loan agreement with PNC Bank ("PNC Bank") in the amount of $33,000.  In September 2012, Anglen created a fraudulent PNC Bank termination of lien statement and used that statement at the Cuyahoga County Title Bureau to discharge PNC Bank's active lien on the vehicle.  Subsequently, Anglen received a replacement title and applied for a loan through Drummond Financial Services, L.L.C. ("Drummond Financial"), d.b.a. LoanMax ("LoanMax"), in South Euclid, Ohio.

As part of the loan process, Anglen was required to provide her driver's license and attest that "the vehicle ha[d] no liens or encumbrances against it." Ultimately, a $10,000 loan was approved by Integrity Funding Ohio, L.L.C. ("Integrity Funding"), a third-party lender for LoanMax. Anglen then acquired a new title to the vehicle, listing Integrity Funding as the lien holder.

{¶4} Following an investigation by PNC Bank's fraud department, Anglen was named in an 11-count indictment charging her with forgery in violation of R.C. 2913.31(A)(2); forgery in violation of R.C. 2913.31(A)(3); tampering with records in violation of R.C. 2913.42(A)(1); grand theft in violation of R.C. 2913.02(A)(3); grand theft in violation of R.C. 2913.02(A)(3); securing writings by deception in violation of R.C. 2913.43(A); grand theft in violation of R.C. 2913.02(A)(3); a motor vehicle certificate of title offense in violation of R.C. 4505.19(A)(4); forgery in violation of R.C. 2913.31(A)(1); forgery in violation of R.C. 2913.31(A)(3); and tampering with records in violation of R.C. 2913.42(A)(1).

{¶5} In August 2014, Anglen pleaded no contest to all counts as charged in her indictment. Following a Crim.R. 11 plea colloquy, the trial court accepted Anglen's plea and found her guilty of all counts. Before sentencing, however, Anglen filed a motion to withdraw her plea, which was denied following a hearing.

{¶6} In September 2014, the trial court held a restitution hearing where the state presented the testimony of Kenneth Briggs ("Briggs"), district manager for LoanMax, and Margaret Lodge ("Lodge"), fraud investigator for PNC Bank. At the conclusion of the

hearing, the court sentenced Anglen to five years of community control and ordered her to pay restitution in the amount of $35,539.91 to PNC Bank and $10,000 to Drummond Financial.

## II. Law and Analysis

### A. No Contest Plea

{¶7} In her first assignment of error, Anglen argues the trial court committed reversible error and abused its discretion when it accepted her plea, which was not knowingly, intelligently, and voluntarily made. Anglen specifically contends that the trial court failed to explain the effects of her no contest plea.

{¶8} Crim.R. 11(C) governs the process by which a trial court must inform a defendant of certain constitutional and nonconstitutional rights before accepting a felony plea of guilty or no contest. The underlying purpose of Crim.R. 11(C) is to convey certain information to a defendant so that he or she can make a voluntary and intelligent decision regarding whether to plead guilty or no contest. *State v. Schmick*, 8th Dist. Cuyahoga No. 95210, 2011-Ohio-2263, ¶ 5. Whether the trial court accepted a plea in compliance with Crim.R. 11(C) is subject to de novo review. *State v. Lunder*, 8th Dist. Cuyahoga No. 101223, 2014-Ohio-5341, ¶ 22.

{¶9} The effect of a no contest plea is set forth in Crim.R. 11(B)(2), which states:

> The plea of no contest is not an admission of defendant's guilt, but is an admission of the truth of the facts alleged in the indictment, information, or complaint, and the plea or admission shall not be used against the defendant in any subsequent civil or criminal proceeding.

{¶10} Informing a defendant of the effect of his or her plea is a nonconstitutional right, and therefore, is subject to review for substantial compliance rather than strict compliance. *State v. Griggs,* 103 Ohio St.3d 85, 2004-Ohio-4415, 814 N.E.2d 51, ¶ 11-12. "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). Furthermore, "failure to comply with nonconstitutional rights will not invalidate a plea unless the defendant thereby suffered prejudice." *Griggs* at ¶ 12. The test for prejudice is "whether the plea would have otherwise been made." *Nero* at 108.

{¶11} Our review of the record shows that the trial court failed to advise Anglen, either orally or in writing, that her no contest plea was an admission of the truth of the facts as alleged in the indictment. However, "the Ohio Supreme Court has consistently held that the court's failure to tell the defendant the effect of a plea to a felony, does not invalidate the plea unless [Anglen] shows that [s]he was prejudiced by the court's failure to substantially comply with the rule." *State v. Simonoski,* 8th Dist. Cuyahoga No. 98496, 2013-Ohio-1031, ¶ 11, citing *Griggs* at ¶ 12; *State v. Jones*, 116 Ohio St.3d 211, 2007-Ohio-6093, 877 N.E.2d 677, ¶ 53; *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 14-17. *See also State v. Petitto,* 8th Dist. Cuyahoga No. 95276, 2011-Ohio-2391, ¶ 5-8 (court's failure to advise the defendant regarding the effect of the plea did not prejudice the defendant).

{¶12} Interpreting the Ohio Supreme Court's decision in *Griggs*, this court has held:

> [a] defendant who has entered a guilty or no contest plea without asserting actual innocence is presumed to understand the effect of the plea, and the court's failure to inform the defendant of the effect of the plea as required by Crim.R. 11 is presumed not to be prejudicial.

*State v. Mays*, 8th Dist. Cuyahoga No. 99150, 2013-Ohio-4031, ¶ 12, citing *Griggs* at syllabus. *See also Jones* at ¶ 54 ("Under *Griggs*, any error by the trial court in failing to adequately inform him of the effect of his plea was not prejudicial, because Jones did not assert his innocence at the colloquy.").

{¶13} In the present case, there is no indication that Anglen asserted her actual innocence at the plea hearing or in any other way indicated she was unaware that her plea would constitute an admission of the truth of the facts alleged in the indictment. Under the totality of these circumstances, we find no prejudice resulting from the trial court's failure to state the language set forth in Crim.R. 11(B)(2) on the record.

{¶14} Anglen further argues the trial court failed to clearly articulate its authority to impose restitution following her no contest pleas. We recognize that when advising Anglen that she may be subjected to an order of restitution, the trial court mistakenly referred to Anglen's plea as "a plea of guilty" as opposed to a "plea of no contest." However, we find no merit to Anglen's contention that she reasonably believed, based on the court's misstatement, that an order of restitution was limited to a plea of guilty.

{¶15} Prior to entering her plea, the prosecutor and defense counsel set forth the parameters of Anglen's no contest plea, including the maximum penalties she faced and

the availability of restitution, although no agreement regarding the amount of restitution had been made. Defense counsel stated that he "shared this information with [Anglen]" and that she wished to proceed with the plea as outlined. Thereafter, the trial court inquired into Anglen's understanding of her plea. Anglen indicated that she was satisfied with the services of her attorney and that it was her intention to plead no contest to each count of the indictment as outlined by the prosecutor and defense counsel. Viewing the plea hearing in its entirety, it is evident that, despite the trial court's misstatement, Anglen subjectively understood that the court was entitled to impose restitution as a consequence of her no contest pleas.

{¶16} Based on the foregoing, we find that Anglen's no contest pleas were knowingly, intelligently, and voluntarily made.

{¶17} Anglen's first assignment of error is overruled.

**B. Presentence Motion to Withdraw Plea**

{¶18} In her second assignment of error, Anglen argues the trial court committed reversible error and abused its discretion when it denied her motion to withdraw her plea before sentencing.

{¶19} Under Crim.R. 32.1, "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea."

**{¶20}** In general, "a presentence motion to withdraw a guilty plea should be freely and liberally granted." *State v. Xie*, 62 Ohio St.3d 521, 527, 584 N.E.2d 715 (1992). It is well established, however, that "[a] defendant does not have an absolute right to withdraw a guilty plea prior to sentencing. A trial court must conduct a hearing to determine whether there is a reasonable legitimate basis for the withdrawal of the plea." *Id.* at paragraph one of the syllabus.

**{¶21}** The decision to grant or deny a presentence motion to withdraw is within the trial court's discretion. *Id*. at paragraph two of the syllabus. Absent an abuse of discretion, the trial court's decision must be affirmed. *Id*. at 527. A trial court does not abuse its discretion in denying a motion to withdraw the plea where a defendant was (1) represented by competent counsel, (2) given a full Crim.R. 11 hearing before he entered a plea, (3) given a complete hearing on the motion to withdraw, and (4) the record reflects that the court gave full and fair consideration to the plea withdrawal request. *State v. Peterseim*, 68 Ohio App.2d 211, 214, 428 N.E.2d 863 (8th Dist.1980).

**{¶22}** This court has also set forth additional factors to consider, including whether (1) the motion was made in a reasonable time, (2) the motion stated specific reasons for withdrawal, (3) the record shows that the defendant understood the nature of the charges and possible penalties, and (4) the defendant had evidence of a plausible defense. *State v. Pannell*, 8th Dist. Cuyahoga No. 89352, 2008-Ohio-956, ¶ 13, citing *State v. Benson*, 8th Dist. Cuyahoga No. 83178, 2004-Ohio-1677.

**{¶23}** Applying these factors, we find the trial court did not abuse its discretion in denying Anglen's motion to withdraw her no contest plea. In accordance with the parameters set forth in *Peterseim*: (1) Anglen was represented by highly competent counsel, (2) was afforded a full Crim.R. 11 hearing, (3) was given a full and impartial hearing on her motion to withdraw her plea, and (4) the record reveals that the court gave full and fair consideration to Anglen's plea withdrawal request. In fact, the court continued the withdrawal hearing for two weeks in order to provide Anglen with sufficient time to present all relevant information in support of her motion. As articulated by defense counsel, "the main reason Ms. Anglen would like to withdraw her plea remains that she's had a change of heart since the day of the change of plea, the day of trial." However, "it is well-established that a mere change of heart is an insufficient justification for withdrawing a plea." *State v. Brown*, 8th Dist. Cuyahoga No. 101367, 2015-Ohio-598, ¶ 26, citing *State v. Meade*, 8th Dist. Cuyahoga No. 50678, 1986 Ohio App. LEXIS 6908, *3 (May 22, 1986).

**{¶24}** Moreover, we find no merit to Anglen's position that "the court failed to consider the possible new evidence which could have provided a defense to the charges." At the motion to withdraw hearing, Anglen argued that she had "newly discovered evidence" that demonstrated that she was at the Bureau of Motor Vehicle's ("BMV") on September 10, 2012, and not September 4, 2012, as alleged in her indictment. Thus, Anglen maintained that these newly discovered documents were material to a potential

defense, "particularly because they show that Anglen went to a BMV branch on a different date than alleged by the state."

**{¶25}** In response, the state did not dispute the fact that Anglen provided receipts showing that she visited a BMV on September 10, 2012. However, the state provided the court with evidence showing, regardless of her actions on September 10, 2012, Anglen went to a Cuyahoga County BMV on September 4, 2012, as alleged in the indictment, and presented a fraudulent termination of PNC Bank's lien and received a replacement title to her vehicle. Specifically, the state provided the court with (1) Anglen's September 4, 2012, receipt for the replacement title on the vehicle, and (2) a copy of the credit agreement Anglen filled out with LoanMax, which was also dated September 4, 2012. Based on the evidence submitted by the state, we agree with the trial court's finding that whether Anglen went to a BMV on a date after the fraudulent acts were committed is irrelevant to her defense, and therefore, an insufficient basis to withdraw her no contest plea.

**{¶26}** Anglen's second assignment of error is overruled.

### C. Restitution

**{¶27}** In her third assignment of error, Anglen argues that trial court committed reversible error when it ordered restitution in favor of Drummond Financial and PNC Bank.

**{¶28}** R.C. 2929.18 governs restitution and provides that financial sanctions may include:

Restitution by the offender to the victim of the offender's crime * * * in an amount based on the victim's economic loss. * * * If the court imposes restitution, at sentencing, the court shall determine the amount of restitution to be made by the offender. If the court imposes restitution, the court may base the amount of restitution it orders on an amount recommended by the victim, the offender, a presentence investigation report, * * * and other information, provided that the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense. If the court decides to impose restitution, the court shall hold a hearing on restitution if the offender, victim, or survivor disputes the amount.

R.C. 2929.18(A)(1).

**{¶29}** "Economic loss" is defined as "any economic detriment suffered as a direct and proximate result of the commission of the crime." *State v. Plants*, 8th Dist. Cuyahoga No. 101552, 2014-Ohio-5293, ¶ 3, citing R.C. 2929.01(L).

**{¶30}** The standard of review of a trial court's order of restitution is an abuse of discretion. *State v. Milenius*, 8th Dist. Cuyahoga No. 100407, 2014-Ohio-3585, ¶ 10, citing *State v. Marbury*, 104 Ohio App.3d 179, 661 N.E.2d 271 (8th Dist.1995).

**{¶31}** First, Anglen contends that Drummond Financial did not qualify as a "victim" for purposes of R.C. 2929.18(A)(1) because it was not named in the indictment and did not suffer an economic loss. We disagree.

**{¶32}** We note that the definition of a "victim," for purposes of restitution, is not limited to those named in an indictment. *State v. Wilson*, 2d Dist. Montgomery No. 26488, 2015-Ohio-3167, ¶ 16. Moreover, the record supports the court's determination that Drummond Financial suffered an economic loss. Drummond Financial, d.b.a. LoanMax, operates lending businesses that specialize in short-term,

automobile-collateralized loans. With respect to the facts of this case, Briggs stated that Anglen, through LoanMax, applied for and was provided with a loan in the amount of $10,000 using her 2012 Buick as collateral. Briggs testified that although the loan was funded by LoanMax's third-party lender, Integrity Funding, an outstanding balance of $10,000 is due and owing to Drummond Financial pursuant to its contractual agreement with Integrity. Briggs explained, "what happens is with us being the credit service organization, when a customer defaults on the loan, the loan then goes from being Integrity's loan, to being LoanMax's loan, Drummond Financial."

{¶33} Accordingly, we find the trial court did not err or abuse its discretion in concluding that Drummond Financial was a "victim" as contemplated under R.C. 2929.18(A)(1).

{¶34} Next, Anglen contends the actual amount of restitution awarded to Drummond Financial and PNC Bank did not bear a reasonable relationship to the amounts those institutions lost as a direct and proximate cause of the offenses. Specifically, Anglen argues the trial court failed to sufficiently consider the previous payments she made towards her outstanding loans.

{¶35} At the restitution hearing, Anglen submitted documentation showing that she paid $3,500 towards the outstanding balance of the LoanMax loan and $2,872.10 towards the outstanding balance of the PNC Bank loan. However, Briggs testified that Anglen's payment of $3,500 was applied to fees and interest that had accumulated while the LoanMax loan was outstanding. Similarly, Lodge testified that while Anglen made

five monthly payments of $574.42 each towards the PNC Bank loan, the most current balance on the loan at the time of the restitution hearing was $35,539.91, because interest has been accruing at $6.75 on a daily basis since July 31, 2013. Thus, the record adequately reflects that the separate payments of $3,500 and $2,872.10 were contemplated and accounted for by the trial court when calculating the amount of economic loss suffered as a result of Anglen's criminal conduct.

**{¶36}** Accordingly, we find the trial court did not abuse its discretion by ordering restitution in the amount of $10,000 to Drummond Financial and $35,539.91 to PNC Bank.

**{¶37}** Anglen's third assignment of error is overruled.

### III. Conclusion

**{¶38}** Anglen's no contest pleas were knowingly, intelligently, and voluntarily made. Further, the trial court did not abuse its discretion in denying Anglen's motion to withdraw her pleas. Finally, the trial court did not abuse its discretion by ordering restitution in the amount of $10,000 to Drummond Financial and $35,539.91 to PNC Bank.

**{¶39}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having

been affirmed, any bail pending appeal is terminated.   Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


EILEEN T. GALLAGHER, JUDGE

FRANK D. CELEBREZZE, JR., A.J., and
ANITA LASTER MAYS, J., CONCUR