**[Cite as *State v. Rieves*, 2018-Ohio-955.]**

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 105386**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## SEAN K. RIEVES

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-16-608473-A

**BEFORE:** Boyle, J., E.T. Gallagher, P.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** March 15, 2018

**ATTORNEY FOR APPELLANT**

Paul A. Mancino, Jr.
Mancino Mancino & Mancino
75 Public Square Building, Suite 1016
Cleveland, Ohio   44113-2098


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
BY:    Erin Stone
Assistant County Prosecutor
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio   44113

MARY J. BOYLE, J.:

{¶1} Defendant-appellant, Sean Rieves, appeals his convictions and sentence. He raises six assignments of error for our review:

1. Defendant was denied due process of law when the court overruled his motion to suppress.

2. Defendant was denied due process of law when the court imposed a sentence beyond the agreed sentence.

3. Defendant was denied his constitutional rights when the court failed to advise defendant concerning self-incrimination when the court called upon defendant at sentencing to speak.

4. Defendant was denied due process of law when the court would not allow defendant to withdraw his plea of no-contest when he did not receive an agreed sentence.

5. Defendant was denied due process of law when the court failed to explain the effect of a no-contest plea.

6. Defendant was denied his Sixth Amendment rights when the court based its sentence on facts not alleged in the indictment nor admitted at the plea.

{¶2} We find no merit to Rieves's arguments and affirm the judgment of the trial court.

I. Procedural History and Factual Background

{¶3} In August 2016, Rieves was indicted on nine counts: four counts of trafficking in violation of R.C. 2925.03(A)(2) (fentanyl, heroin, cocaine, and marijuana), three counts of possession in violation of R.C. 2925.11(A) (fentanyl, heroin, and cocaine), one count of having a weapon while under disability in violation of R.C. 2923.13(A)(3), and one count of possessing criminal tools in violation of R.C. 2923.24(A). The

trafficking counts carried juvenile specifications, and the trafficking and possession counts carried one-year firearm specifications and forfeiture specifications (gun, six cell phones, a scale, $6,780, a surveillance system, a drug press, a grinder, a blender, a laptop, an iPad, and promethezine). The weapons disability and possessing criminal tools counts carried a forfeiture specification for the gun, and possessing criminal tools also contained a furthermore clause that the tools were used in the commission of a felony. Rieves's wife was also indicted on all counts except the weapons disability count.

{¶4} After pleading not guilty to all charges, Rieves moved to suppress the evidence against him. Before the suppression hearing, the state placed its plea offer on the record. As part of the deal, Rieves would plead guilty to an amended indictment of three counts of trafficking (fentanyl, heroin, and cocaine) with the one-year firearm specification and forfeiture specifications, but without the juvenile specification (which would make each offense a lesser-degree felony by one level), and the weapons disability count. The state's offer was "packaged with the plea offer" to Rieves's wife, where she would plead guilty to permitting drug abuse and possessing criminal tools, both fifth-degree felonies (which meant that probation was mandatory because she did not have any prior felony convictions). In exchange, the state would request the court to nolle the remaining charges against Rieves. The state indicated that if Rieves went forward with his suppression motion, however, the plea offer was "off the table." Rieves rejected the state's plea deal and proceeded with his motion to suppress.

{¶5} At the close of the suppression hearing, the trial court denied Rieves's

motion.    Subsequently, Rieves pleaded no contest to the indictment preserving his right to challenge the court's denial of his suppression motion.

{¶6}    The trial court held a joint sentencing hearing on the present case and Rieves's community control violation for a previous trafficking case.    Rieves stipulated to the community control violation.    The trial court gave him credit for time served and terminated his community control sanctions in his previous trafficking case.

{¶7} In the present case, the trial court merged the trafficking and possession counts for fentanyl, heroin, and cocaine, and the state elected to proceed with the three trafficking counts.    The trial court then sentenced Rieves to one year in prison for the firearm specifications attached to the trafficking heroin and trafficking fentanyl counts and ordered that they be served consecutive to each other but concurrent to the one-year terms for each of the remaining firearm specifications (for a total of two years for all of the firearm specifications).    The trial court also sentenced Rieves to ten years for trafficking heroin, eight years for trafficking fentanyl, six years for trafficking cocaine, 18 months for trafficking marijuana, 36 months for having a weapon while under disability, and six months for possessing criminal tools and ordered that they be served concurrent to each other (for a total of ten years), for an aggregate sentence of 12 years in prison.

{¶8}    The trial court further ordered that all of the items listed in the indictment be forfeited.    It imposed five years of mandatory postrelease control for trafficking heroin, three years of mandatory postrelease control for trafficking fentanyl and cocaine, and up to three years of postrelease control for the remaining three counts.    The trial

court also sentenced Rieves to a mandatory fine of $10,000 and imposed court costs. It is from this judgment that Rieves now appeals.

{¶9} We will address Rieves's assignments of error out of order for ease of discussion.

## II. Motion to Suppress

{¶10} In his first assignment of error, Rieves contends that the trial court erred when it determined that police seized his property pursuant to a valid search warrant. Specifically, Rieves argues that Detective Witkiewicz's affidavit did not provide sufficient information to support a finding that there was probable cause to conduct a search of his home.

{¶11} The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Article I, Section 14, of the Ohio Constitution affords the same protection as the Fourth Amendment in felony cases. *State v. Smith*, 124 Ohio St.3d 163, 2009-Ohio-6426, 920 N.E.2d 949, ¶ 10, fn. 1.

{¶12} "A neutral and detached judge or magistrate may issue a search warrant only upon a finding of probable cause." *State v. Ingold*, 10th Dist. Franklin No. 07AP-648, 2008-Ohio-2303, ¶ 17; Crim.R. 41(C). In determining whether a search warrant is supported by probable cause, the issuing judge is confined to the averments contained in the supporting affidavit. *Id*. The affidavit must "name or describe the person to be

searched or particularly describe the place to be searched, name or describe the property to be searched for and seized, state substantially the offense in relation thereto, and state the factual basis for the affiant's belief that such property is there located."   Crim.R. 41(C).

{¶13} When determining whether probable cause exists for the issuance of a warrant, courts employ a "totality-of-the-circumstances" test, requiring issuing judges

> to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before [them], including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), paragraph one of the syllabus, quoting *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

{¶14} Upon appellate review, the reviewing court should not substitute its judgment for that of the issuing judge by conducting a de novo review of whether the affidavit sufficiently provides probable cause for the warrant.   *George* at 330, citing *Gates*.   Instead, the duty of the reviewing court is simply to ensure that the issuing judge or magistrate had a substantial basis for concluding probable cause existed.   *George* at paragraph two of the syllabus.   Doubtful or marginal cases should be resolved in favor of upholding the warrant.   *George* at 330; *see also Gates* at 237, fn. 10.

{¶15} Thus, the question presented in this case is whether, when looking at the totality of the circumstances, Detective Witkiewicz's affidavit provided a substantial basis for the issuing judge to conclude there was a fair probability that police would find

evidence of trafficking narcotics in a search of Rieves's home.

{¶16} In his affidavit, Detective Witkiewicz described the property to be searched and set forth his qualifications and experience in investigating drug trafficking and other drug offenses. He then made the following relevant averments:

8.) Affiant states that in late 2015, Detective Griffis of the Southeast Area Narcotics Task Force (SEALE) was advised by Parma Narcotics of a black male selling heroin throughout Cuyahoga County and possibly lived at an address in a SEALE community. The black male's name was Sean Rieves. Running Rieves through various law enforcement data bases provided addresses in Bedford Hts. and Maple Hts. as possible residences.

9.) Affiant states that in May 2016, SEALE Narcotics received a telephone call from an anonymous caller saying that Sean Rieves was selling narcotics, particularly heroin, and was residing at the house located at * * *, Maple Hts., Ohio, 44137 (said residence to be searched) with a female named Erica Rieves.

10.) Affiant states that on June 23, 2016, SEALE Detectives performed a trash pull from the residence located at * * *, Maple Hts., Ohio, 44137 (said residence to be searched) in order to look for signs of drug trafficking occurring at the residence. Affiant states that Detectives took 3 bags of garbage from the tree lawn of the residence. The garbage bags were taken to a secured location in order to examine for signs of drug trafficking.

11.) Affiant states that Detective Witkiewicz located eleven (11) sandwich baggies with corners ripped off inside the trash, two of which contained a white/tan powder residue consistent with heroin, and numerous used rubber gloves. Detectives also discovered a letter addressed to "Sean Rieves" with the address of * * *, Maple Hts., Ohio. Detectives also located a prescription receipt for "Erica Rieves." Affiant states that in his training and experience these plastic baggy tear offs are indicative of individuals packaging drugs for resale.

12.) Affiant states that in his training and experience, heroin and other narcotics are placed into the smaller sandwich style bags, and the drug trafficker tears and keeps the corner from the baggy containing the narcotics, discarding the empty portion of the baggy into the trash. The smaller bags of heroin or narcotics are now packaged for resale.

13.) Affiant states that by utilizing Sean Rieves personal identifiers such as name, date of birth and social security number the affiant checked for any criminal history involving Rieves. Affiant states that Rieves has been charged with robbery, felony assault, domestic violence, disorderly conduct, menacing, theft, criminal trespass, aggravated burglary, possession of drugs, kidnapping, weapons under disability, and aggravated robbery.

**{¶17}** Initially, we note that it is well established that the "trash pull" itself did not implicate Fourth Amendment concerns. In *California v. Greenwood*, 486 U.S. 35, 40, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988), the United States Supreme Court held that the Fourth Amendment does not prohibit the warrantless search and seizure of garbage left for collection outside the curtilage of a suspect's home. This is because a person has no reasonable expectation of privacy in items left for trash collection in an area that is susceptible to open inspection and "accessible to animals, children, scavengers, snoops, and other members of the public." *Id.*

**{¶18}** Rieves argues, however, that the contents of the trash pull "added nothing to establish probable cause" in this case. Specifically, Rieves maintains that the affidavit did not provide probable cause because it was based on the trash-pull evidence and two anonymous, "stale" tips that did not contain any indicia of reliability. And because the anonymous tips were not reliable or otherwise corroborated, he maintains that the detective's affidavit was based only on the trash-pull evidence, which did not provide sufficient probable cause.

**{¶19}** Rieves cites to a Sixth Circuit case, *United States v. Abernathy*, 843 F.3d 243 (6th Cir.2016), in support of his argument that trash-pull evidence cannot establish probable cause to search a home. After reviewing *Abernathy*, however, we find that it

does not stand for Rieves's proposition.   Further, we find *Abernathy* to be distinguishable.

**{¶20}** In *Abernathy*, police obtained a search warrant based on a detective's averment that he "had received information that the occupants of [a particular home] have been and are currently engaging in illegal drug activity."   *Id*. at 247.   The detective also conducted a trash pull.   The detective found several marijuana roaches in the trash with marijuana residue inside, several plastic bags consistent with those used to package marijuana for resale with marijuana residue in the bags, and mail connecting the defendant to the address.

**{¶21}** The defendant in *Abernathy* moved to suppress the evidence and also moved for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 171, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), challenging the accuracy of certain representations by the detective in the affidavit.   At the *Franks* hearing, the detective ultimately admitted that when he submitted the affidavit, he had no information that somebody was selling drugs out of the defendant's residence.   The court found that the detective's statement in the affidavit that he "had received information that the occupants of [the home] have been and are currently engaging in illegal drug activity" violated *Franks* and struck it from the affidavit.

**{¶22}** Without the detective's statement that he had received information that the occupants of the home were engaging in illegal drug activity, the Sixth Circuit analyzed whether there was probable cause without it — which left only the evidence obtained

from the trash pull. The court ultimately concluded that the evidence pulled from defendant's trash, standing alone, did not create a fair probability that drugs would be found in defendant's home. *Id.* at 254.

{¶23} But here, Rieves did not establish at the motion to suppress hearing that Detective Witkiewicz fabricated or misrepresented the facts in any part of his affidavit. Thus, the trash-pull evidence in this case was not "standing alone" as it was in *Abernathy*. There were two anonymous tips to police that Rieves was selling heroin. The first one stated that Rieves was selling heroin throughout Cuyahoga County and "possibly lived at an address in a SEALE community." The first tip was received in late 2015, which was six or seven months before Detective Witkiewicz requested the search warrant. Detective Witkiewicz averred that he conducted a search of Rieves's name "through various law enforcement data bases" and found "addresses in Bedford Hts. and Maple Hts. as possible references."

{¶24} The second anonymous tip, received by police in May 2016 (one month before the trash pull), stated that Rieves was selling narcotics, particularly heroin, and that he lived at a particular address, which was given, in Maple Heights. The anonymous tipster further stated that Rieves lived with a female named Erica Rieves.

{¶25} The "veracity, reliability and basis of knowledge [of an anonymous informant] are all highly relevant in determining probable cause." *State v. Pustelnik*, 8th Dist. Cuyahoga No. 91779, 2009-Ohio-3458, ¶ 22, citing *Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527. "'There must be some basis in the affidavit to indicate the

informant's credibility, honesty or reliability.'" *Id.* at ¶ 22, quoting *State v. Harry*, 12th Dist. Butler No. CA2008-01-013, 2008-Ohio-6380, ¶ 20. The anonymous tipsters in this case did not include any information to establish they were honest or that the information was reliable, i.e., the tipsters did not explain how they knew Rieves or how they knew that he was selling heroin, nor do they provide any details regarding Rieves's heroin trafficking operation. Thus, there is no question that the two anonymous tips in this case, standing alone, did not provide an adequate basis for a probable cause. *See Gates* at 2332-2333 ("bare bones" affidavits do not provide a "substantial basis for determining the existence of probable cause").

{¶26} But "a deficiency in one of these principles does not negate probable cause if there is a strong showing on another or if there is some other indicia of reliability." *Id.*, citing *Gates*. Even where there is an absence of evidence in an affidavit regarding a tipster's reliability, corroboration of the informant's statements by police investigation can provide "sufficient indicia of the reliability and veracity of the informant's statements." *Id.* at ¶ 23. *See also State v. Ross*, 6th Dist. Lucas No. L-96-266, 1998 Ohio App. LEXIS 94 (Jan. 16, 1998) ("Even in cases involving anonymous informants, a tip is sufficient where certain important or key elements of the tip are corroborated by police observation or investigation."); *State v. Goddard*, 4th Dist. Washington No. 97CA23, 1998 Ohio App. LEXIS 4832 (Oct. 2, 1998) (while affidavit was lacking in showing a basis for anonymous informant's knowledge and in establishing his veracity, the corroborating efforts by police officers made search constitutional).

**{¶27}** Moreover, with regard to informants' reliability and the basis of their knowledge, under the current test of *Gates* the correct inquiry for the issuing judge is not whether the affidavit includes reference to the informant's basis of knowledge, veracity, or reliability. *See State v. Litteral*, 12th Dist. Fayette No. CA98-02-002, 1999 Ohio App. LEXIS 4 (Jan. 4, 1999). Rather, the issuing judge must determine whether, under the totality of the circumstances, there exists a fair probability that evidence of a crime or contraband will be found in a particular place. *Id*. This determination should be based upon a practical, commonsense evaluation of all the circumstances set forth in the affidavit. *Gates* at 230. "[T]he focus of the probable cause inquiry is the totality of the circumstances presented in the affidavit, not each component standing alone." *State v. Robinson*, 7th Dist. Columbiana No. 10 CO 37, 2011-Ohio-6639, ¶ 23. In this case, unlike the facts in *Abernathy*, the affidavit included two anonymous tips and the evidence from the trash pull.

**{¶28}** We find *Abernathy* to be distinguishable for another reason. The trash-pull evidence in *Abernathy* only consisted of several marijuana roaches with marijuana inside and several plastic bags that "were consistent with those used to package marijuana for resale," which also had marijuana residue in them. In examining the trash-pull evidence, the Sixth Circuit determined that this evidence only suggested that "a small quantity of marijuana might have recently been in the defendant's residence." *Id*. at 254. The court further explained:

> [T]he connection between the small quantity of marijuana paraphernalia recovered from defendant's garbage and his residence is too logically

attenuated to create a fair probability that more drugs were in the residence. Although the trash pull evidence certainly suggested that someone in the residence had smoked marijuana recently, that fact alone does not create an inference that the residence contained additional drugs. Drugs by their very nature "are usually sold and consumed in a prompt fashion," * * * and so the more probable inference upon finding drug refuse is that whatever drugs were previously in the residence had been consumed and discarded.

*Id*. at 255, citing *United States v. Elliott*, 576 F.Supp. 1579 (S.D.Ohio 1984).

{¶29} In the present case, however, the trash-pull evidence consisted of 11 plastic "tear offs." Detective Witkiewicz averred that in his "training and experience," drug traffickers place heroin and other narcotics into "smaller sandwich style bags" for resale and "tear off" the top corner of the bag, leaving the narcotics in the smaller bag and discarding the "empty portion of the baggy into the trash." A person using or consuming drugs would never have possession of the "tear off" portion of the bag. Instead, the drug user would only have possession of the smaller bag that contained (or had contained) the drug. Thus, unlike the trash evidence in *Abernathy*, which only indicated that someone consumed marijuana, the trash evidence here indicated that someone was selling drugs because "tear offs" would only be present in a drug trafficker's trash. Even though drugs are sold in "prompt fashion," it is likely drug traffickers would have more drugs in their home to sell.

{¶30} Rieves further argues that the first anonymous tip was "stale" because it was six or seven months old. And he maintains that the information obtained from the more recent anonymous tip "went stale" because police waited up to one month or more before searching the contents of his trash for contraband.

**{¶31}** Probable cause must exist at the time the application for a warrant is made. *State v. Shropshire*, 8th Dist. Cuyahoga No. 103808, 2016-Ohio-7224, ¶ 25. There is no arbitrary time limit for when information offered to support a search warrant application becomes stale; instead, the information becomes stale "when enough time has elapsed such that there is no longer 'sufficient basis to believe * * * that the items to be seized are still on the premises.'" *United States v. Lacy*, 119 F.3d 742, 746 (9th Cir.1997), quoting *United States v. Gann*, 732 F.2d 714, 722 (9th Cir.1984). Although the trash pull may have come as much as one month or more after the most recent anonymous tip, the trash pull itself was completed on the day that Detective Witkiewicz applied for the warrant and, thus, some of the information used in support of the application was fresh. *See State v. Brown*, 8th Dist. Cuyahoga No. 105202, 2017-Ohio-8315 (although the informant's information was over a month old, two trash pulls were conducted within a day of the warrant application).

**{¶32}** Rieves also argues that two cases from this court, *State v. Williams*, 8th Dist. Cuyahoga No. 98100, 2013-Ohio-368, and *State v. Weimer*, 8th Dist. Cuyahoga No. 92094, 2009-Ohio-4983, support his argument that the trash-pull evidence was insufficient to establish probable cause. After reviewing these cases, we find them to be distinguishable from the instant case. *See Williams* at ¶ 18 (trash-pull evidence was not sufficient because there were upper and lower units in the home and there was nothing on the trash can identifying which unit it came from); *Weimer* at ¶ 33 (trash-pull evidence was not sufficient, standing alone, because defendant established that the detective

misrepresented other facts in his affidavit).

**{¶33}** After reviewing the affidavit in this case, we conclude that under the totality-of-the-circumstances test, Detective Witkiewicz's affidavit provided a substantial basis for the issuing judge to conclude that there was a fair probability that contraband or evidence of heroin trafficking would be found in the home, i.e., probable cause existed. The tips included information that Rieves was trafficking narcotics, particularly heroin, throughout Cuyahoga County. The second tipster also gave an address in Maple Heights where Rieves was residing with a female named Erica Rieves.

**{¶34}** The detective explained in the affidavit that he collected the trash from the curb of the residence. The trash-pull evidence included 11 "tear offs" indicative of trafficking smaller bags of drugs, two of which contained "white/tan powder residue" consistent with heroin. The detective also said that he found mail addressed to Rieves in the trash as well as a prescription receipt for Erica Rieves. The detective included Rieves's criminal history in the affidavit, which was extensive and also included a conviction for drug possession. Thus, the trash-pull evidence corroborated the anonymous tips — which indicated that Rieves lived at the address with Erica Rieves and sold heroin.

**{¶35}** Our holding in this case is consistent with many other courts holding that when an anonymous tip is received by police, drugs, and/or drug paraphernalia found in the person's trash is sufficient corroborating evidence to establish probable cause. *See State v. Quinn*, 12th Dist. Butler No. CA2011-06-116, 2012-Ohio-3123 (anonymous tip

without any basis of knowledge or reliability standing alone was not sufficient to support probable cause but when it was coupled with evidence from a trash pull, probable cause to support a search warrant existed); *State v. McGorty*, 5th Dist. Stark No. 2007CA00257, 2008-Ohio-2643 (search warrant was supported by probable cause when statements from an anonymous confidential informant were independently corroborated by marijuana residue found in defendant's trash); *State v. Akers*, 12th Dist. Butler No. CA2007-07-163, 2008-Ohio-4164, ¶ 25 (probable cause for search warrant existed when bare-bones anonymous tip that defendant was selling methamphetamine, marijuana, and cocaine was partially corroborated by a evidence of a single sandwich bag containing marijuana remains in defendant's trash); *State v. Baas*, 10th Dist. Franklin No. 13AP-644, 2014-Ohio-1191 (anonymous tip coupled with evidence from a trash pull was sufficient to support probable cause for a search warrant).

{¶36} In light of these cases and the fact that we are obligated to accord great deference to the probable cause determination made by the magistrate or judge who issues the search warrant and resolve any doubtful or marginal case in favor of upholding the search warrant, we conclude that the judge in this case, which we acknowledge is a close call, "had a substantial basis for concluding that probable cause existed" for issuing the search warrant. *George*, 45 Ohio St.3d 325, 544 N.E.2d 640, paragraph two of the syllabus, following *Gates*, 462 U.S. at 238-239, 103 S.Ct. 2317, 76 L.Ed.2d 527.

{¶37} Accordingly, Rieves's first assignment of error is overruled.

## III. Effect of No Contest Plea

**{¶38}** In his fifth assignment of error, Rieves maintains that the trial court violated his due process rights when it failed to explain to him the effect of a no contest plea.

**{¶39}** The standard for reviewing whether the trial court accepted a plea in compliance with Crim.R. 11(C) is de novo. It requires an appellate court to review the totality of the circumstances and determine whether the plea hearing was in compliance with Crim.R. 11(C). *State v. Cardwell*, 8th Dist. Cuyahoga No. 92796, 2009-Ohio-6827, ¶ 26, citing *State v. Stewart*, 51 Ohio St.2d 86, 364 N.E.2d 1163 (1977).

**{¶40}** The underlying purpose of Crim.R. 11(C) is to convey certain information to a defendant so that he or she can make a voluntary and intelligent decision regarding whether to plead guilty or no contest. *State v. Ballard*, 66 Ohio St.2d 473, 479-480, 423 N.E.2d 115 (1981). Before accepting a felony plea, the trial court must inform the defendant of the nature of the charges, the maximum penalty involved, and the effect of the plea (i.e., the nonconstitutional requirements) set forth in Crim.R. 11(C)(2)(a) and (b) and notify the defendant of the constitutional rights the defendant is waiving under Crim.R. 11(C)(2)(c).

**{¶41}** The effect of a no contest plea is set forth in Crim.R. 11(B)(2), which provides:

> The plea of no contest is not an admission of defendant's guilt [unlike a guilty plea], but is an admission of the truth of the facts alleged in the indictment, information, or complaint, and the plea or admission shall not be used against the defendant in any subsequent civil or criminal proceeding.

**{¶42}** With respect to the nonconstitutional requirements of Crim.R. 11, as set

forth in Crim.R. 11(C)(2)(a) and (b), reviewing courts shall consider whether there was substantial compliance with the rule. *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 14-17. Substantial compliance means that under the totality of the circumstances, defendants subjectively understand the implications of their plea and the rights they are waiving. *Id.*, citing *State v. Nero*, 56 Ohio St.3d 106, 564 N.E.2d 474 (1990).

{¶43} Furthermore, a defendant who challenges his or her plea on the basis that it was not knowingly, intelligently, and voluntarily entered into must show a prejudicial effect. *Veney* at ¶ 15. The test for prejudice is whether the plea would have otherwise been made. *Id.*

{¶44} In the present case, the record reveals that the trial court failed to substantially comply with Crim.R. 11(C)(2)(b) because it failed to ask Rieves if he understood that his plea was an admission of the truth of the facts alleged in the indictment. Nonetheless, the Ohio Supreme Court has held that unless a defendant asserts "actual innocence," he or she is presumed to understand the effect of the plea and "a court's failure to inform the defendant of the effect of [the plea] as required by Crim.R. 11 is presumed not to be prejudicial." *State v. Griggs*, 103 Ohio St.3d 85, 2004-Ohio-4415, syllabus; *see also State v. Taylor*, 8th Dist. Cuyahoga No. 94569, 2010-Ohio-5607, *discretionary appeal not allowed*, 128 Ohio St.3d 1462, 2011-Ohio-1829, 945 N.E.2d 524; *State v. Thomas*, 8th Dist. Cuyahoga No. 94788, 2011-Ohio-214, *discretionary appeal not allowed*, 128 Ohio St.3d 1484,

2011-Ohio-2055, 946 N.E.2d 241. Although the plea at issue in *Griggs* was a guilty plea, this court has "extended this presumption" to no contest pleas as well. *State v. Musleh*, 8th Dist. Cuyahoga No. 105305, 2017-Ohio-8166, ¶ 18, citing *State v. Anglen*, 8th Dist. Cuyahoga No. 102022, 2015-Ohio-4070.

**{¶45}** Here, Rieves did not assert "actual innocence" during his plea proceeding. Additionally, Rieves does not offer any argument as to how he was prejudiced in any way by the trial court's failure to determine if he understood the effect of his no contest plea nor is any prejudice apparent from the record.

**{¶46}** Rieves cites to several cases from this court in support of his argument that because the trial court failed to inform him of the effect of his no contest plea, we should vacate his plea: *N. Royalton v. Semenchuk*, 8th Dist. Cuyahoga No. 95357, 2010-Ohio-6197; *Parma v. Pratts*, 8th Dist. Cuyahoga No. 94990, 2011-Ohio-728; and *Cleveland v. Adams*, 8th Dist. Cuyahoga No. 97523, 2012-Ohio-1063. Rieves further quotes *Adams* where this court stated "that when a trial court completely fails to comply with a rule in accepting a plea, a demonstration of prejudice is unnecessary." *Id*. at ¶ 9.

**{¶47}** The cases cited by Rieves, however, are misdemeanor cases. We have explained that when it comes to felonies, "the Ohio Supreme Court has consistently held that the court's failure to tell the defendant the effect of a plea * * * does not invalidate the plea unless appellant shows that he was prejudiced by the court's failure to substantially comply with the rule." *State v. Simonoski*, 8th Dist. Cuyahoga No. 98496, 2013-Ohio-1031, ¶ 11, citing *Griggs*, 103 Ohio St.3d 85, 2004-Ohio-4415, 814 N.E.2d

51; *Jones*, 116 Ohio St.3d 211, 2007-Ohio-6093, 877 N.E.2d 677; and *Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621.

**{¶48}** "Unlike in felony cases, misdemeanor cases *only* require the court to advise the defendant of the effect of the plea." (Emphasis added.) *Simonoski* at ¶ 14. But in felony cases, the court is required to advise the defendant of the constitutional rights he or she is waiving by entering into the plea, as well as the nonconstitutional requirements pursuant to Crim.R. 11(C)(2)(a) and (b), which ensures that the defendant knowingly, intelligently, and voluntarily enters into his or her plea. *Id*. Therefore, the cases that Rieves relies on, *Semenchuk*, *Pratts*, and *Adams*, are not applicable here.

**{¶49}** Rieves further argues that we should vacate his plea based on *State v. Jones*, 2d Dist. Montgomery No. 25688, 2014-Ohio-5574. In *Jones*, the Second District vacated the defendant's no contest plea in a felony case without a showing of prejudice where the trial court failed to inform the defendant of the effect of the plea. *Id*. at ¶ 15. This court, however, has already distinguished *Jones* when faced with the same argument. *See Musleh*, 8th Dist. Cuyahoga No. 105305, 2017-Ohio-8166. We explained that in *Jones*:

> [T]he state conceded that the trial court did not inform the defendant of the effect of his no contest plea but argued that the defendant subjectively understood the effect of his plea because the trial court had explained the maximum potential sentence the defendant could receive and the rights he was waiving upon entering his plea. *Id*. at ¶ 14. The court rejected the

state's argument, reasoning that the effect-of-plea requirement "cannot be met simply by the informing the defendant of the maximum sentence and the right to a jury trial" and concluding that "[u]nder the facts and circumstances" of that case, the defendant's plea was not knowingly, intelligently and voluntarily entered. *Id*. at ¶ 5, 14. The *Jones* opinion does not indicate specifically what advisements were made to the defendant at the plea hearing in that case and did not apply the presumption in *Griggs*.

*Id.* at ¶ 19. Therefore, just as we found in *Musleh*, *Jones* does not support Rieves's arguments here.

{¶50} Accordingly, after a review of the record in this case, we conclude that Rieves did not establish that he was prejudiced by the trial court's failure to explain the effect of his no contest plea to him. We further note that at no time did Rieves assert that he was actually innocent of the charges.

{¶51} Rieves's fifth assignment of error is overruled.

## IV.  Purported Agreed Sentence

{¶52} In his second assignment of error, Rieves contends that the trial court violated his due process rights when it imposed a sentence "beyond the agreed sentence" of eight years.  In his fourth assignment of error, he argues that the trial court violated his due process rights when it would not allow him to withdraw his plea when it did not impose the "agreed sentence."  We will address these assignments of error together because they are related to the same facts that occurred at the plea and sentencing hearing.

**A. Relevant Facts**

{¶53} At the joint plea hearing, the trial court asked Rieves and his wife if anyone had threatened them with anything or promised them anything to get them to enter into the plea. Rieves's wife responded "no," and then Rieves stated, "No, just not for her to go to jail." The trial court apparently misunderstood Rieves, and replied, "Pardon? We did talk about a potential sentence of eight years." Rieves's defense counsel explained the misunderstanding and told the court that Rieves was referring to his wife going to jail, not himself. The trial court reassured Rieves that he was "accurate" on that point; his wife would not go to jail. The trial court then asked Rieves: "[i]s there anything else that you've been promised?" Rieves responded "no."

{¶54} At the sentencing hearing, the state informed the court that prison was mandatory and that it believed "a substantial prison sentence [was] warranted." The state informed the court that Rieves was on community control sanctions for drug trafficking when he was charged in this case. It further stated that Rieves's criminal history included felony domestic violence in 2009 (where he served one year in prison), attempted robbery in 2011 (where he served four years in prison), and the previous trafficking case for which he was still on community control sanctions and had violated the terms of those sanctions by committing the offenses in the present case. The state further noted that "there were three minor children in the home at the time the search warrant was executed."

{¶55} Defense counsel told the court that Rieves had a serious drug addiction and

that he needed help with this addiction. Defense counsel stated that Rieves told him that he "didn't sell any of these drugs to anybody" and was not "selling drugs out of that house." Defense counsel then stated, "[s]o we would hope that the court might consider — I know that there was discussions had that if he pled in a certain way he could get six years, or if he pled this way he would be getting eight years. We would hope the court might consider giving him something less than the eight years."

{¶56} The court then questioned defense counsel about his statements that Rieves was not trafficking drugs. Defense counsel clarified that Rieves was in fact selling drugs, he was just not selling drugs out of his house or in that area.

{¶57} The court turned to Rieves next and asked him if he had anything to say. Rieves responded, "[n]othing further from me Judge. I'm sorry." The trial court then stated: "Mr. Rieves, you have an opportunity to address the court before I announce sentence. Is there anything you would like to say?" The following exchange then took place:

> THE DEFENDANT: I just want to say on my behalf and my family's behalf, you know, I just ask that you be more lenient on the sentencing. I wasn't selling drugs. I wasn't selling no drugs, whether it was out of the house or giving it to other people or people dying at the hands of me or anything that I did or anything of that nature. I know Fentanyl is a serious drug when you hear about it, but, in all honesty, I didn't know what Fentanyl was until after I was doing research for this case. I never knew nothing about it. I just had a daughter a month ago. Her mother is in the back of the courtroom. I would just like you to be more lenient on me. I know eight years is a lot of time.
>
> THE COURT: I'm not following you. You had a daughter?
>
> THE DEFENDANT: Yes.

THE COURT: With someone other than [your wife]?

THE DEFENDANT: Yes.

THE COURT: Her mother is in the back of the courtroom here?

THE DEFENDANT: Yes.

THE COURT: And you didn't know what Fentanyl was?

THE DEFENDANT: No.

THE COURT: You weren't selling that to anybody?

THE DEFENDANT: I never gave nobody no Fentanyl. I never sold no Fentanyl to nobody. It was just like — actually, I got it, but I didn't even know the seriousness or whatever it was of Fentanyl. I never even heard of Fentanyl until I started sitting in here watching the news and hearing how serious it was, and then getting re-indicted and I'm saying this is what I'm being charged with. I knew it was brought to me as if it was heroin and not Fentanyl.

THE COURT: This was all a surprise to you?

THE DEFENDANT: I mean, no, it wasn't no surprise to me at all, no.

{¶58} At that point, the trial court informed Rieves that it was going to give him credit for time served in his previous trafficking case and terminate his community control sanctions. The trial court then stated:

The court did talk to your counsel and you about an agreed sentence here under certain terms, and you pled — after pleading no contest and preserving your appellate rights or entering into the plea agreement that was offered by the state of Ohio, you chose to enter the no contest option.

After we * * * took your no contest plea, the state put on the record the factual basis of that plea or of the charges. The court found you guilty of those charges.

And the assumption being that, you know, you were either going to be silent up here at sentencing or, you know, tell the truth and not come up here and manufacture a lie about 50 grams of Fentanyl being for personal use.

The court does not feel bound by its prior agreement given your behavior and lack of truthfulness up here.

**{¶59}** The trial court discussed the nine counts and imposed a sentence on each count, for a total of 12 years in prison. It then explained the following.

Mr. Rieves, it is clear from your behavior that you are not only a drug trafficker, you are a major drug trafficker. You had significant quantities of heroin, cocaine, and Fentanyl found in your residence along with quantities of marijuana.

I had you on probation for trafficking. I gave you a break, because I thought you were married and had three kids, despite the fact that you had just finished serving a four-year prison sentence. You have shown me no degree of remorse or responsibility. And, frankly, you deserve every minute of these 12 years to keep society safe from merchants of death that you are.

**{¶60}** After the trial court finished imposing the sentence, defense counsel then stated to the court, "[t]here was no discussion ever had that indicated that if he gave a dissertation that you were not satisfied with that the eight years that he agreed to plead to would be enhanced. The deal, as I understand it, I believe — [.]" The trial court interrupted defense counsel and stated: "[H]ere's how it works in a court of law. The court expects honesty. If he doesn't want to be honest, don't say anything; but to come up here and say that was for personal use is an affront to the intelligence of everyone in our criminal justice system." Defense counsel then informed the court that Rieves wished to withdraw his plea. The trial court responded, "[i]t's too late for that. If you don't like the sentence, you don't get to withdraw the plea."

**B. Analysis**

{¶61} The Due Process Clause of the Fourteenth Amendment requires that any plea of guilty or no contest in a criminal case must be entered knowingly, intelligently, and voluntarily. *State v. Engle*, 74 Ohio St.3d 525, 1996-Ohio-179, 660 N.E.2d 450. When a trial court promises a certain sentence, the promise becomes an inducement to enter a plea, and unless that sentence is given, the plea is not voluntary. *State v. Kelly*, 8th Dist. Cuyahoga Nos. 91875 and 91876, 2010-Ohio-432, ¶ 21, citing *State v. Allen*, 6th Dist. Sandusky No. S-09-004, 2009-Ohio-3799. Accordingly, a trial court commits reversible error when it participates in plea negotiations but fails to impose the promised sentence. *State v. Triplett*, 8th Dist. Cuyahoga No. 69237, 1997 Ohio App. LEXIS 493, 5 (Feb. 13, 1997).

{¶62} We first note that the transcript establishes that the state was not involved in any purported "agreed sentence." Neither the state nor defense counsel stated anything on the record indicating that the parties had agreed to a specific sentence. The state confirms this fact in its brief.[1]

{¶63} It is apparent then that any alleged agreement was between the trial court and the defense. But the trial court's comment at the plea hearing — that "[w]e did talk

---

[1]According to the state's brief, when the parties were talking in the hallway, the trial court informed them that "it was his intent to sentence the appellant to eight years in prison if he pled no contest, but that he would sentence the appellant to less time if he accepted responsibility for his actions by pleading guilty." The state further informs us in its brief that "the judge did provide a specific number of years as to the lesser amount of time, but the [state] no longer recall[ed] the exact number."

about a potential sentence of eight years" — negates Rieves's argument that there was an agreed sentence. "Potential" does not amount to a promise.

{¶64} Moreover, Rieves stated at the plea hearing that the only thing that *was* promised to him in exchange for his plea was that his wife would not go to jail. When further asked by the trial court if there was anything else promised to him, Rieves replied that there was not.

{¶65} We also note that during the plea hearing, the trial court fully informed Rieves of the maximum sentence that he could receive for each offense and did not state anything about Rieves receiving a particular sentence. In fact, there was nothing said at the plea hearing about an agreed sentence — not from the trial court, defense counsel, or Rieves.

{¶66} We acknowledge that there were comments made at the sentencing hearing implying that the trial court had indicated it would impose a certain sentence if the defendant chose to plead no contest, but even defense counsel, when asking the court to consider a sentence "something less than the eight years," referred to the purported "agreement" as "discussions." Discussions, however, are not a promise.

{¶67} Crim.R. 32.1 provides: "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." A defendant who seeks to withdraw a guilty plea after the imposition of sentence has the burden of establishing the existence of manifest injustice.

*State v. Smith*, 49 Ohio St.2d 261, 361 N.E.2d 1324 (1977), paragraph one of the syllabus.

There is no manifest injustice in this case based on the record before us because the trial court's sentence simply does not constitute a clear or openly unjust act.

{¶68} We also find that Rieves's sentence is not contrary to law and is supported by the record. The trial court sentenced him within the permissible statutory ranges and considered the principles and purposes of felony sentencing set forth in R.C. 2929.11 and 2929.12. The record reflects that the trial court considered the fact that Rieves was on probation (for drug trafficking) at the time he was arrested in his case and that it also considered Rieves's criminal history, pointing out that Rieves had practically just gotten out of a four-year prison term when he committed the first trafficking case. The trial court further considered the quantities of the drugs, the fact that Rieves was convicted of trafficking four different kinds of drugs (heroin, cocaine, fentanyl, and marijuana), and the fact that Rieves did not show any remorse at the hearing because he denied even selling drugs to anyone.

{¶69} Accordingly, Rieves's second and fourth assignments of error are overruled.

## V.   Other Sentencing Issues

{¶70} In his remaining two assignments of error, Rieves raises issues relating to his sentence. In his third assignment of error, he argues that the trial court violated his constitutional right against self-incrimination when it failed to advise him at his sentencing hearing that "if he said something that the court disagreed with that the court

was not bound by the agreed sentence." While this is a novel argument, it has no merit because there was no "agreed sentence."

{¶71} In his sixth assignment of error, Rieves maintains that the trial court violated his Sixth Amendment rights when it based his sentence on facts not alleged in the indictment or admitted at the plea hearing. He argues that the following comments: "Mr. Rieves, it is clear from your behavior that you are not only a drug trafficker, you are a major drug trafficker. You had significant quantities of heroin, cocaine, and fentanyl found in your residence along with quantities of marijuana[,]" show that the trial court based its sentence "on matters that were improperly alleged."

{¶72} Rieves cites to *State v. Armetta*, 8th Dist. Cuyahoga No. 84366, 2005-Ohio-3689, in support of his argument that a trial court cannot base its sentence "upon a crime neither charged nor proven." In *Armetta*, however, the trial court based the defendant's sentence in part "on unsubstantiated allegations" made by the victim at the sentencing hearing that the defendant frequently engaged in drag racing and had recently been seen "buying and driving another race car." *Id*. at ¶ 8, 17.

{¶73} Unlike *Armetta*, the trial court's comments in this case — that Rieves was a "major drug trafficker" — were based on the amount of drugs that were found in Rieves's home and that he admitted to by pleading no contest and not on any unproven allegations.

{¶74} Accordingly, Rieves's third and sixth assignments of error are overruled.

{¶75} Judgment affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY J. BOYLE, JUDGE

EILEEN T. GALLAGHER, P.J., and
PATRICIA ANN BLACKMON, J., CONCUR